TRACY TEMPLETON, Plaintiff-Appellee, v. CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Defendant-Appellant.

First District (5th Division)   No. 1—90—0312

Opinion filed March 15, 1991.

George H. Brant and Myles L. Tobin, both of Chicago and North Western Transportation Company, and Cornelius P. Callahan and Mark E. Christensen, both of Butler, Callahan and Ehret, both of Chicago, for appellant.

Demos & Burke, of Chicago (William J. Burke, James Thomas Demos, and Linda A. Leonetti, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

The plaintiff, Tracy Templeton (Templeton), was an employee of the defendant, Chicago and North Western Transportation Company (North Western). On January 27, 1984, Templeton was severely injured when he fell 31 feet through an opening in the deck of a railroad bridge to the ice below. At the time he was injured, Templeton was working on North Western's bridge spanning the Illinois River near Pekin, Illinois. Templeton brought a negligence action pursuant to the Federal Employers' Liability Act (FELA) (45 U.S.C. §51 et seq. (1988)) in which plaintiff alleged that he was injured as a result of the negligence of North Western. A trial by jury resulted in a verdict for the plaintiff in the amount of $3.5 million after a reduction for the jury's finding that the plaintiff was 14% contributorily negligent. North Western appeals from the final judgment entered on the verdict.

Templeton was 27 years of age at the time of his accident on January 27, 1984. He began employment with North Western in 1980. He

worked both as a painter and a carpenter on the bridge and building (B&B) crew. The B&B department was responsible for the construction and maintenance of bridges.

The redecking project to which Templeton was assigned in October 1983 required the B&B crew to replace all of the ties on the Illinois River bridge in successive 40-foot sections. By January 27, 1984, the date of Templeton's accident, the redecking had been completed, and the B&B crew was working on a fixed surface. However, the railroad track still had to be realigned in order to permit trains to again travel over the bridge at nominal operating speeds. Track realignment required access to the underside of the bridge, which was accomplished by temporarily removing individual sections of the walkway grating. Realignment work was being performed throughout the week of Templeton's accident.

Templeton's accident occurred on the bridge surface at about 10 a.m. He was assigned to remove bolts called "double grips" with an air impact wrench. Meanwhile, other employees removed a single, 30-foot by 15-inch section of walkway grating so that a scaffold could be lowered through the opening they had created. Once the scaffold was in place, another employee would use it as a platform underneath the bridge to assist in retightening bolts which anchored the track to the ties.

The narrow opening in the bridge deck was not barricaded while the employees raised the scaffold. Templeton was not wearing a safety line at the time of his accident. North Western's safety policy did not require a restraining device to be used in all facets of bridge work.

At the time of the accident, Templeton was continuing to remove "double grips" on the west side of the bridge. His air impact wrench was connected to an air compressor by a hose approximately 100 feet long. His foreman thought Templeton was getting too far ahead of the rest of the crew and called him back. As Templeton started to walk back toward the rest of the crew, the hose on the air impact wrench hung up on one of the "double grips."

No one knows exactly what happened next. No one saw what caused Templeton to fall. North Western alleges the last time anyone saw Templeton, he was moving south, but looking north, about five or six feet north of the narrow opening in the walkway. Templeton alleges the first notice any of the co-workers had of the fall was a scream at which time they each looked around and saw the plaintiff falling through the opening in the deck with his hands slightly lower than his feet and the air impact wrench still in his hands.

Templeton had no recollection of the events of the occurrence and could not say what happened or why or how he fell. A co-worker testified that he saw the plaintiff bounce off the ice below, slide 10 feet, then try unsuccessfully to get up. In any event, Templeton landed on the ground adjacent to the river and some 31 feet below the bridge. He was taken to the hospital by an emergency rescue squad. Templeton has suffered severe physical injuries as a result of his fall. The testimony conflicts as to the extent of brain damage, if any, sustained by Templeton.

North Western raises the following issues on appeal: (1) whether the trial court erred in permitting plaintiff to introduce evidence that North Western allegedly failed to comply with Occupational Safety and Health Administration (OSHA) regulations; (2) whether the trial court erred in instructing the jury that such an alleged violation could be considered as evidence of railroad negligence; (3) whether the trial court erred in permitting plaintiff to introduce evidence of previous employee accidents on other North Western bridges; (4) whether the trial court erred in not ordering a new trial when it learned that the jury surreptitiously brought extrinsic evidence into jury deliberations; and (5) whether the size of the verdict was excessive.

In its most decisive among the five alleged errors, North Western argues that the trial court erred in instructing the jury that a violation of an OSHA regulation could be considered as proof of North Western's negligence. OSHA regulations are statutorily created working conditions based on the federally enacted Occupational Safety and Health Act of 1970 (OSH Act) (29 U.S.C. §651 *et seq.* (1970)). It is North Western's contention that OSHA is inapplicable to a railroad employee such as Templeton.

■■ Railroad workers do occupy a somewhat different status than the average American worker whether he is a fireman, oiler, engineer or whatever. The rights and responsibilities of the railroad worker injured during his employment are basically determined by the FELA (45 U.S.C. §51 *et seq.* (1908)) and Federal decisions construing that act. (*Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755.) The FELA allows suits involving injuries to railroad men to be filed in either State or Federal courts. 45 U.S.C. §56 (1948).

At trial testimony was introduced that certain safety standards, including OSHA standards, required nets or safety belts whenever a worker was working higher than 25 feet above ground. The trial court also gave the jury an instruction embodying the OSHA catch net regulation.

The nub of North Western's argument concerns the testimony of the absence of a safety net and safety belt and the judge's instruction that the jury could consider OSHA regulations in its consideration of the issue of North Western's negligence.

■ In 1970 Congress enacted the Federal Railroad Safety Act (FRSA) (45 U.S.C. §421 *et seq.* (1970)). The FRSA contemplated a comprehensive and uniform set of safety regulations in all areas of railroad operations. (*Chicago Transit Authority v. Flohr* (7th Cir. 1977), 570 F.2d 1305.) The United States Secretary of Transportation is charged with the duty to prescribe all necessary rules, regulations ordered and standards for all areas of railroad safety. (45 U.S.C. §431 (1970).) The Secretary of Transportation has delegated these responsibilities to the Administrator of the Federal Railroad Administration (FRA), a unit of the Department of Transportation. (49 C.F.R. §1.49(m) (1988).) Further, North Western argues that the FRA has exclusive jurisdiction over working conditions pertaining to railroad bridges and the issue of whether or not safety nets and safety belts are required in bridge redecking work.

North Western contends that the FRSA and not OSHA controls the safety standards applicable to the work Templeton was engaged in, *i.e.*, "redecking of the bridge's railway bed."

Plaintiff asserted that North Western had been negligent in violating regulations promulgated by OSHA. Plaintiff argues that the OSHA requirements of nets and safety belts are not preempted by the FRSA. The basis of this argument is that OSHA regulations are only preempted by the FRSA when there is an exercise of authority over the same working conditions regulated by OSHA.

The real legal issue in respect to safety regulations was whether the FRA actually exercised its jurisdiction over the railroad deck work, and if not, does the FRSA preclude the application of OSHA safety rules as evidence of a railroad's negligence in this case.

In this case, at the time of Templeton's injury, January 1984, there was no clear-cut FRA regulation requiring nets or safety belts to be provided for workers on railroad bridges. In his 74-page brief plus appendix the plaintiff points to none. Alternatively, North Western points to numerous sections of the Federal Register indicating that no regulations requiring nets and/or safety belts were ever adopted by the FRA. Finally, the fact that there was no such requirement is disclosed in a proposed notice of rule published in the Federal Register by the FRA (56 Fed. Reg. 3434 through 3441 (1991)) and brought to this court's attention just prior to oral argument. Although the plaintiff has emphasized certain portions of the notice by underlin-

ing proposed safety rules for railroads, counsel failed to note the following, also contained in the notice:

"43 FR 10585 Both courts and the Occupational Safety and Health Review Commission have held that the assertion of authority in a policy statement constitutes an exercise of FRA's statutory authority under the rail safety laws sufficient to displace OSHA standards, pursuant to section 4(b)(1) of the OSH Act, with respect to health and safety issues intrinsic to 'railroad operations.' *Velasquez v. Southern Pacific Transp. Co.*, 734 F.2d 216, 218 (5th Cir. 1984); *Southern Pacific Transp. Co. v. Usery*, 539 F.2d 386 (5th Cir. 1976), *cert. denied*, 434 U.S. 874 (1977); *Consolidated Rail Corp.*, 10 OSHC (BNA) 1577 (1982)." 56 Fed. Reg. 3434, 3435 (1991).

In 1978 the FRA issued a statement to the effect that OSHA regulations would not apply to, among other aspects of the railroad industry, "railroad bridges." (43 Fed. Reg. 10587 (1978).) The railroad industry points to this declaration as indicative of the vesting of exclusive jurisdiction over railroad bridges in the FRA.

Finally, North Western points to a 1988 amendment to the FRSA in which it was specifically stated, "[t]he Secretary shall, within one year after June 22, 1988, issue such rules, regulations, orders, and standards as may be necessary for the safety of maintenance-of-way employees, including standards for bridge safety equipment, such as nets, walkways, handrails and safety lines." (45 U.S.C. §431(n) (1988).) This court could find no Federal case where a Federal court interpreted the FRSA as having either directly or inferentially held that the FRA did not intend to preempt OSHA regulations. North Western has cited a number of cases to the contrary. They are cited in the notice published by the FRA referred to above.

Preemption is viewed somewhat differently when applied to the question of preemption of State regulations by a Federal statute. That assumption is that historical police powers of a State are not superceded by a Federal act unless that is the clear intention of Congress. (*Ray v. Atlantic Richfield Co.* (1978), 435 U.S. 151, 55 L. Ed. 2d 179, 98 S. Ct. 988.) Where a particular area is not totally foreclosed to the State, the State may regulate in certain situations. In the FRSA, Congress made explicit declaration that no State rail safety regulations shall remain valid after the promulgation of a Federal regulation covering the same subject matter as that covered by the State law. (45 U.S.C. §434 (1970).) In *Liepelt v. Norfolk & Western Ry. Co.* (1978), 62 Ill. App. 3d 653, 378 N.E.2d 1232, *rev'd on other grounds* (1980), 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755,

the trial court held that the Federal act did not preempt an Indiana safety statute relating to railroads. We note, however, that the *Liepelt* court only considered the narrow issue of whether the Indiana Switch Light Act and Standard covered the same subject matter. *Liepelt*, 62 Ill. App. 3d at 660, 378 N.E.2d at 1239.

The able trial judge was obviously attempting to follow Illinois law on the subject. Yet, both the trial court and this court are compelled to follow Federal decisions in determining rights and obligations created by laws enacted by the United States Congress. *Bowman v. Illinois Central R.R. Co.* (1957), 11 Ill. 2d 186, 142 N.E.2d 104.

North Western cites the case of *Velasquez v. Southern Pacific Transportation Co.* (5th Cir. 1984), 734 F.2d 216, in support of its proposition. The *Velasquez* case involved a railroad worker who was injured while working on a railroad bridge. The railroad workers had to remove a portion of the wooden walkway along the track so they could reach the area underneath the track. Velasquez slipped and fell through this opening, landing on the creek bed nine feet below. *Templeton* also involved a railroad worker injured in a fall. Templeton's attorneys made a valiant attempt to distinguish his case from the *Velasquez* case; however, *Velasquez* is precedent for the proposition that the trial court erred in admitting evidence of OSHA violations and instructing the jury it could consider such evidence on the issue of railroad negligence. *Velasquez v. Southern Pacific Transportation Co.* (5th Cir. 1984), 734 F.2d 216.

In *Velasquez* the court held that a policy statement constituted a sufficient exercise of statutory authority delegated to the FRA to displace OSHA standards. Templeton attempts to distinguish his situation from that of Velasquez by arguing that the accident in this case occurred when Templeton fell 31 feet off a bridge whereas Velasquez was working replacing a large beam supporting the track when he slipped and fell through the opening. The *Velasquez* court plainly and clearly held that an instruction to the effect that the jury could consider an OSHA violation of the issue of a railroad's negligence was reversible error. The court plainly stated, "We agree with Southern Pacific's argument that OSHA standards do not apply to walkways along the tracks, or railroad bridges, because they have been displaced by a Federal Railroad Administration (FRA) policy statement." *Velasquez*, 734 F.2d at 218.

The issue of whether or not the admission of the evidence concerning violations was harmless was not addressed in *Velasquez*. We do not address it here. It may well be that such evidence is admissible under a different theory, *i.e.*, failure to provide a safe work place.

In *Missouri Pacific R.R. Co. v. R.R. Comm'n* (5th Cir. 1987), 833 F.2d 570, the court considered the question of whether the introduction of evidence of violations of certain State safety regulations was preempted by the FRSA policy statement. The court found, "[t]o hold as *Velasquez* did, that the FRA Policy Statement prevented plaintiff from securing an instruction on OSHA regulations, does not control the issue of the exercise of FRA jurisdiction to the exclusion of state regulations." *Missouri Pacific R.R. Co. v. R.R. Comm'n* (5th Cir. 1987), 833 F.2d at 576 n.6.

Templeton also argues that the introduction of evidence concerning the OSHA violation and the instruction was at best harmless. Yet as the *Velasquez* court indicates, the error created " 'a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations' " and required a reversal. *Velasquez v. Southern Pacific Transportation Co.* (5th Cir. 1984), 734 F.2d at 219, quoting *Miller v. Universal City Studios, Inc.* (5th Cir. 1981), 650 F.2d 1365, 1372.

■ We believe the trial judge attempted to follow the spirit of both State and Federal law, yet we are compelled to follow the aforecited Federal cases. We reverse and remand the matter for a new trial based on the narrow issue of the erroneous instructions. In light of our conclusion, we do not reach the other issues raised by the parties.

Reversed and remanded.

LORENZ, P.J., and McNULTY, J., concur.