USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1951 LINDA TALBOTT, ETC., ET AL., Plaintiffs, Appellants, v. C.R. BARD, INC., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Mark L. Wolf, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Campbell, Senior Circuit Judge, and ____________________ John R. Gibson,* Senior Circuit Judge. ____________________ ____________________ Jeffrey S. Beeler with whom Jeffrey A. Newman and Newman, _________________ __________________ _______ Heineman & Itzkowitz were on brief for appellants. ____________________ Francis C. Lynch with whom Daryl J. Lapp and Palmer & Dodge ________________ _____________ ______________ were on brief for appellee C.R. Bard, Inc. Robert D. Keefe with whom Hale and Dorr was on brief for ________________ _____________ appellee David Prigmore. William H. Kettlewell with whom Dwyer & Collora was on brief _____________________ _______________ for appellee John Cvinar. Michael S. Raab, Attorney, Civil Division, with whom Frank _______________ _____ W. Hunger, Assistant Attorney General, Donald K. Stern, United __________ ________________ States Attorney, Douglas N. Letter, Appellate Litigation Counsel, _________________ United States Department of Justice, and Margaret Jane Porter, _____________________ Chief Counsel, and Beverly Rothstein, Attorney, Food and Drug __________________ Administration, were on brief for the United States, amicus curiae. ____________________ August 14, 1995  ____________________ *Of the Eighth Circuit, sitting by designation. ____________________ 2 CAMPBELL, Senior Circuit Judge. Section 360k(a) of ____________________ the Medical Device Amendments ("MDA") to the Food, Drug and Cosmetic Act ("FDCA") provides: [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement -- (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter. 21 U.S.C. 360k(a) (1988). This appeal presents two questions: (1) whether the above provision applies to state tort law claims asserted against a medical device manufacturer; and (2) if so, whether there is an exception to the preemption clause where the manufacturer fails to comply with the MDA. We hold that the answers to the two questions are, respectively, yes and no. We therefore affirm the district court's dismissal of this case for failure to state a claim under Fed. R. Civ. P. 12(b)(6). I. It is unnecessary to set out the facts and procedural background at length as these are in the district court's comprehensive opinion. Talbott v. C.R. Bard, Inc., _______ ________________ 865 F. Supp. 37, 39-52 (D. Mass. 1994) (sections I and II.A). -3- 3 To orient the reader of this opinion, we provide only the following brief summary. On December 28, 1988, Eunice Beavers died on the operating table during an angioplasty procedure when a heart catheter failed to deflate while inserted in one of her coronary arteries. Her heirs, Linda Talbott et al., sued the manufacturer of the heart catheter, C.R. Bard, Inc. ("Bard"), and two members of its management for wrongful death, alleging numerous state tort claims: negligence, breach of express and implied warranties, punitive damages, negligent infliction of emotional distress, fraudulent misrepresentation and concealment, negligent hiring, civil conspiracy, unfair trade practices. The district court dismissed the complaint under Fed. R. Civ. P. 12(b)(6), finding that all the claims were preempted by  360k(a) of the MDA. Plaintiffs now appeal. II. To determine whether federal law preempts state law, we look to the intent of Congress: congressional intent to displace state law must be "clear and manifest" before preemption is found. Rice v. Santa Fe Elevator Corp., 331 ____ ________________________ U.S. 218, 230 (1947). Such intent may be expressed either explicitly, in the language of a statute, or implicitly, through passage of a statutory scheme that extensively occupies the field or where the purpose and objectives of federal law would be frustrated by state law. Here, Congress -4- 4 has manifested its intention an explicit preemption clause,  360k(a). Thus, absent any "general, inherent conflict" between state and federal law, we need only ascertain the preemption Congress intended. Freightliner Corp. v. Myrick, __________________ ______ 115 S. Ct. 1483, 1488 (1995); Cipollone v. Liggett Group, 112 _________ _____________ S. Ct. 2608, 2617-18 (1992). We review the district court's reading of the clause de novo, taking all of plaintiffs' __ ____ factual averments as true and indulging every reasonable inference in plaintiffs' favor. Garcia Hotel Ltd. ____________________ Partnership v. Ponce Federal Bank, 958 F.2d 15, 17 (1st Cir. ___________ __________________ 1992). A. State Tort Law Imposes Requirements ___________________________________ Plaintiffs insist that the district court erred in concluding that state tort law imposes a "requirement" as that term it used in 360k(a). Plaintiffs argue that Congress meant "requirement" to include only the state's positive enactments such as statutes and regulations  and not common law causes of action. This issue, however, has been resolved against plaintiffs in this circuit in two decisions: King v. Collagen Corp., 983 F.2d 1130, 1135-36 ____ _______________ (1st Cir.), cert. denied, 114 S. Ct. 84 (1993), and Mendes v. ____________ ______ Medtronic, Inc., 18 F.3d 13, 16 (1st Cir. 1994). In both, _______________ this court has ruled that Congress understood state tort law to impose a "requirement" such as to subject state tort law to the MDA's preemption clause. Where the requirement is -5- 5 "different from, or in addition to" the requirement imposed by the MDA, state tort law will be preempted. A like construction has been adopted by every other circuit court that has considered the issue.1 Plaintiffs argue that we should overrule King and Mendes as having been wrongly- ____ ______ decided. However, except in certain circumstances not present here, the prior decisions of panels of this court may be overruled only by the full court en banc. United States _____________ v. Newman, 49 F.3d 1, 11 (1st Cir. 1995). We accordingly, we ______ hold that state tort law falls within 360k(a). B. No Exception For Non-Compliance _______________________________ Plaintiffs next argue that, even assuming 360k(a) applies to state tort law generally, the district court erred in holding that it applies where a manufacturer has failed to comply with the provisions of the MDA by fraudulently obtaining approval from the Food and Drug Administration ("FDA"). Plaintiffs argue that, in enacting 360k(a), Congress intended to preempt only state laws that sought to impose liability on manufacturers who were already complying  ____________________ 1. See, e.g., Anguiano v. E.I. Du Pont De Nemours & Co., 44 ___ ____ ________ _____________________________ F.3d 806, 809 (9th Cir. 1995) (dicta); Martello v. CIBA ________ ____ Vision Corp., 42 F.3d 1167, 1168 (8th Cir. 1994), cert. _____________ _____ denied, 63 U.S.L.W. 3904 (1995); Gile v. Optical Radiation ______ ____ _________________ Corp., 22 F.3d 540, 542 (3d Cir.), cert. denied, 115 S. Ct. _____ ____________ 429 (1994); Duncan v. Iolab Corp., 12 F.3d 194, 195 (11th ______ ___________ Cir. 1994) (per curiam); Stamps v. Collagen Corp., 984 F.2d ______ ______________ 1416, 1420-21 (5th Cir.), cert. denied, 114 S. Ct. 86 (1993); ____________ Slater v. Optical Radiation Corp., 961 F.2d 1330, 1333 (7th ______ ________________________ Cir.), cert. denied, 113 S. Ct. 327 (1992). ____________ -6- 6 with the MDA. Congress did not, plaintiffs assert, intend to afford such protection to manufacturers who failed to comply with the provisions of the MDA. Such a result would conflict, in plaintiffs' view, with the MDA's basic purpose of protecting individuals from unreasonably dangerous and defective medical devices. Where a manufacturer has failed to comply with the MDA, state tort liability would merely impose additional state sanctions for noncompliance with the MDA. Here, plaintiffs argue, Bard clearly violated the provisions of the MDA by submitting false data to the FDA in order to obtain approval of its heart catheters. As the district court explained, Talbott, 865 F. _______ Supp. at 41-42, Bard pled guilty in an earlier proceeding to a criminal indictment charging it with conspiring to defraud the FDA in connection with applications for pre-market approval of its heart catheters. Bard was eventually forced to pay civil and criminal fines totaling $61 million. United ______ States v. C.R. Bard, Inc., 848 F. Supp. 287, 289 (D. Mass. ______ _______________ 1994). There is some dispute between the parties as to whether Bard's guilty plea admitted wrongdoing with respect to the particular heart catheter used in Mrs. Beavers's angioplasty. As this is a motion to dismiss, however, we accept plaintiffs' version of the facts. Watterson v. Page, _________ ____ 987 F.2d 1, 3 (1st Cir. 1993). Thus, for present purposes we shall assume that Bard fraudulently obtained approval for the -7- 7 heart catheter by submitting false information to the FDA. The question is whether 360k(a) applies despite such fraudulent activity. The latter issue may already have been resolved in this circuit against plaintiffs. In King, the plaintiff ____ contended that the manufacturer had fraudulently obtained FDA approval and that the MDA's preemption clause therefore did not apply. Judge(now Chief Judge) Torruella, in the opinion for the court, did not reach the question, construing the fraud claim as essentially a failure to warn claim preempted by the MDA. In what was titled a "concurrence," however, the two other judges on the panel expressed the opinion that there was no exception to the MDA's preemption clause for cases in which the manufacturer failed to comply with the MDA. As two judges of the panel took this view, it is arguably now stare decisis.  If so, however, a separate panel in Mendes ______ overlooked the fact. The plaintiff in Mendes did not make ______ the exception-for-noncompliance argument made by the plaintiff in King, arguing merely that the MDA did not apply ____ to state tort law. However, at the end of the opinion, the panel wrote: We express no opinion on whether products liability claims are preempted only if the manufacturer complied with applicable FDA regulations. The complaint contains no allegations regarding Medtronic's noncompliance with FDA regulations, and -8- 8 plaintiff has offered no evidence that Medtronic violated any FDA requirement. Our holding is limited to the facts and claims in this case. Mendes, 18 F.3d at 19-20 (citations omitted). The dicta in ______ Mendes can be read (and plaintiffs argue should be read) to ______ indicate that the issue is still open in this circuit. Alternatively, it might mean only that the panel in Mendes ______ did not pay close attention to the concurrence in King, since ____ that issue was not before it. Given the uncertainty regarding the precedential status of the King concurrence, we ____ shall address the arguments anew, as the district court did. We hold that Congress did not intend to provide for an exception to the MDA's preemption clause where a manufacturer fails to comply with the provisions of the MDA by fraudulently obtaining approval of its device from the FDA. In so holding, we reach the same result reached by the King concurrence and by the two circuit courts of appeal that ____ have expressly addressed this exact issue. See Reeves v. ___ ______ Acromed Corp., 44 F.3d 300, 307 (5th Cir.) (finding no _____________ exception to preemption where a manufacturer fraudulently obtained FDA approval), cert. denied, 115 S. Ct. 2251 (1995); ____________ Michael v. Shiley, 46 F.3d 1316, 1329 (3d Cir. 1995) (same), _______ ______ petition for cert. filed, 63 U.S.L.W. 3874 (U.S. June 2, __________________________ 1995). Section 360k(a) preempts broadly any state tort law "requirement" that is "different from, or in addition to" the -9- 9 comprehensive and detailed requirements set forth by federal law. The terms of the statute make no distinction based upon whether or not a manufacturer has in fact complied with the federal standard. We find nothing to indicate that preemption is conditional upon satisfactory compliance with the federal standard. Section 360k(a) does not mention compliance at all. As 360k(a) reads, the relevant inquiry is simply whether, in the abstract, the state tort law requirement is "different from, or in addition to" the federal requirement. If a device manufacturer fails to meet the federal requirements, it will be subject to federal penalties as set forth in the MDA. Nothing in 360k(a) suggests that the state requirements are somehow revived by this failure to comply with the federal standard. Plaintiffs argue that state tort claims would not impose a "requirement" that is "different from, or in addition to" federal requirements so long as the state judge instructs the jury that a manufacturer's obligations under state tort law were defined by the provisions of the MDA. Given such an instruction, plaintiffs say, state tort law would not be imposing any additional requirements, but would only compensate the victim ex post for failure to meet the MDA standards. This theory of cooperative preemption, however, was expressly rejected, albeit in dictum, in Mendes: ______ One way to ensure that a [state] factfinder applies a standard not adding -10- 10 to or differing from FDA regulations is to supplant the common law standard with FDA's requirements. We find nothing to support that Congress intended such a radical, unwieldy form of preemption, however, particularly where Congress did not intend to create a private right of action under the Federal Food, Drug, and Cosmetic Act. Mendes, 18 F.3d at 19 n.4. It has also been rejected by a ______ number of other circuit courts of appeal. See Lohr v. ___ ____ Medtronic Inc., 56 F.3d 1335, 1343 (11th Cir. 1995) (holding ______________ that "preemption under the MDA cannot be defeated by a common lawsuit alleging a violation of the statutory standards"); Michael, 46 F.3d at 1329 (holding that "states have no _______ authority to police . . . compliance with the FDA's procedures").2 Allowing an exception for noncompliance would disturb the balance Congress struck between the competing goals of protecting individuals from unreasonably dangerous medical devices and spurring innovation by ensuring that device manufacturers are subject to uniform, nationwide standards. See Mendes, 18 F.3d at 16; S. Rep. No. 33, 94th ___ ______ Cong., 2d Sess. 5, 12 (1975), reprinted in 1976 U.S.C.C.A.N. ____________  ____________________ 2. But cf. National Bank of Commerce v. Kimberly-Clark _______ ___________________________ ______________ Corp., 38 F.3d 988, 992 (8th Cir. 1994) (holding that "when a _____ statute only preempts state requirements that are different from or in addition to those imposed by federal law, plaintiffs may still recover under state tort law when defendants fail to comply with the federal requirements"); Slater, 961 F.2d at 1334 (stating in dicta that preemption ______ under 360k(a) "is limited to efforts by states to impose sanctions for compliance with federal regulations"). -11- 11 1070, 1074, 1081). To see how this is so, we need only imagine how such an exception would operate in practice. If state tort claims were allowed to go forward, a state court would initially have to determine whether the manufacturer had complied with the MDA. If, as in this case, the plaintiff claimed that the manufacturer had defrauded the FDA, the state court would need to determine whether the FDA had in fact been defrauded and whether the FDA would have approved the device absent the fraud. Under this scheme, a device manufacturer could potentially be subject to numerous inconsistent interpretations and applications of the MDA across different states, thus undermining the MDA's goal of uniformity. Moreover, if state courts erred in their application of the MDA, they would effectively be imposing requirements "different from, or in addition to" those imposed by federal law. See King, 983 F.2d at 1139-40; ___ ____ Talbott, 865 F. Supp. at 47. _______ To avoid the possibility of disuniform treatment, Congress placed enforcement authority in the FDA. The FDA has the broad power: to withdraw approval of a device if it determines that the device is unsafe or its labelling inadequate, 21 U.S.C. 360e(e); to order a recall of the device, 360h(e); and to initiate criminal prosecutions against manufacturers, as it did in this case against Bard. Bard, 848 F. Supp. at 287. Centrally situated and with the ____ -12- 12 requisite expertise, the FDA is in the best position to determine whether the provisions of the MDA have in fact been violated and to ensure that the law is applied in a uniform manner. See Michael, 46 F.3d at 1329. Given the FDA's ___ _______ central enforcement role, the preemptive scope of 360k(a) becomes clear, as the districtcourt in this case aptly noted: As applied in this case, the express preemption provided by 21 U.S.C.  360k(a) manifests a decision by Congress to replace completely the private rights of action usually available under state law with civil and criminal enforcement by the federal government when thoroughly regulated devices such as Bard's heart catheter, are at issue. This judgment represents a permissible decision by Congress that the public interest will best be served by relying exclusively on the FDA to strike the proper balance between reasonably assuring safety and promoting innovation with regard to new devices that have the potential both to enhance and injure human health. Talbott, 865 F. Supp. at 40; see also Reeves, 44 F.3d at 307. _______ ___ ____ ______ The United States, as amicus curiae, argues that such reasoning, while perhaps applicable in King, is not ____ applicable in this case, because the FDA has already determined that Bard failed to comply with the requirements of the MDA by submitting fraudulent data to the FDA. Thus, the concerns about disuniformity are not implicated in this case. Under the United States' scheme, then, a plaintiff would simply need to prove, not that the manufacturer failed -13- 13 to comply with the MDA, but that the FDA had determined that the manufacturer failed to comply. Although this may be a workable arrangement, it still does not get around the problem that neither the language of 360k(a) nor the legislative history give any hint of congressional intent to create such a unique exception to the MDA's preemption clause. It may or may not be that allowing injured plaintiffs to recover in state actions when the FDA has determined that a manufacturer violated the MDA would be a desirable rule, from a policy standpoint. Congress, however has not provided for such a remedy, choosing instead to place sole enforcement authority in the hands of the FDA. See, e.g., Mendes, 18 F.3d at 19 n. ___ ____ ______ 4 (no federal private right of action under the MDA); Rodriguez v. SK & F Co., 833 F.2d 8, 9 (1st Cir. 1987) (per _________ ___________ curiam) (same). As the district court aptly noted: Congress could reasonably decide that when the FDA has already established it was defrauded, private rights of action to recover damages on behalf of injured individuals are appropriate. Where, as here, it is well-established that there is generally no private right of action to enforce the MDA, if Congress intends to create an exception for fraud which has already been demonstrated by the FDA, it should say so clearly. In view of the unqualified language of the MDA's present preemption provision, however, this court does not have a proper basis for inferring that such an exception was intended.  Talbott, 865 F. Supp. at 47. _______ -14- 14 The absence of a non-compliance exception does not mean that individuals injured by noncompliance will always be without compensation. In a criminal judgment against a manufacturer, a court may, as part of any sentence, award restitution to those harmed. See 18 U.S.C. 3663(a)(1); ___ Bard, 848 F. Supp. at 292-93. While the district court ____ accepted a binding plea agreement from Bard that contained no restitution provision, it did so, in part, because it erroneously believed that civil proceedings could provide appropriate compensation. Talbott, 865 F. Supp. at 47-48; _______ Bard, 848 F. Supp. at 293. Courts in future criminal ____ proceedings will, or should, be aware that restitution may be the only redress for those harmed by manufacturers who have failed to comply with the provisions of the MDA. Like the court below, we cannot find any exception to 360k(a) where a manufacturer of a Class III device has failed to comply with the requirements of the MDA. C. Application of Preemption Clause ________________________________ Having held that the MDA's preemption clause applies to state tort law, whether or not the manufacturer has complied with the provisions of the MDA, we must next determine whether the requirements imposed by plaintiffs' numerous state law claims are "different from, or in addition to" the ones imposed by the MDA. In its opinion below, the district court did a thorough job of analyzing each of -15- 15 plaintiffs' claims, finding that each of them imposed additional requirements and was therefore preempted. As we agree with the district court's analysis and as we see no reason to repeat it here, we adopt those portions of the district court's opinion. Talbott, 865 F. Supp. at 49-52 _______ (section II.C); see In re San Juan Dupont Plaza Hotel Fire ___ ________________________________________ Litig., 989 F.2d 36, 38 (1st Cir. 1993) (where district judge ______ produces a well-reasoned opinion that reaches the correct result, a reviewing court should not write at length merely to put matters in its own words). We hold that all of plaintiffs' claims are preempted by 360k(a). We note, briefly, that the Third Circuit in Michael, 46 F.3d at 1328, 1331, though agreeing in large part _______ with our analysis, has held that claims for breach of express warranty and fraudulent advertising are not preempted by  360k(a). The latter claim is not present in this case, as plaintiffs' fraudulent misrepresentation claim is based on statements made to the FDA, a claim which the Michael court _______ agreed is preempted. Id. at 1329. The former claim, ___ however, is present in this case, and the Third Circuit's position appears to be inconsistent with this circuit's position as set forth in King, 983 F.2d at 1135. We affirm ____ the district court's finding that plaintiffs' express warranty claim is preempted, as that result accurately reflects the law in this circuit. Accord Martello v. CIBA ______ ________ ____ -16- 16 Vision Corp., 42 F.3d at 1167, 1169 (8th Cir. 1994). As we ____________ noted previously, prior decisions by panels of this court may be overruled only by the full court sitting en banc, absent exceptional circumstances not present here. Newman, 49 F.3d ______ at 11.3 D. Remaining Claims ________________ Plaintiffs advance a number of constitutional arguments challenging Congress' power to enact 360k(a) and to displace state tort law. We have reviewed these arguments and find them it be without merit. III. Because all of plaintiffs' claims are preempted by 360k(a) of the MDA, we affirm the district court's dismissal of this suit. We end with this quotation from the district court's opinion: This is a particularly poignant case in which the heirs of a woman who died during angioplasty are being found not to have the right to seek compensation for  ____________________ 3. After oral argument, plaintiffs brought to our attention Lohr, 56 F.3d at 1335, in which an Eleventh Circuit panel ____ held that a plaintiff's negligent design and negligent failure to warn claims were not preempted by 360k(a). The court in Lohr, however, explicitly based its holding on the ____ fact that the device in question had not gone through the pre-market approval process, but instead was marketed under  510(k) as "substantially equivalent" to an existing device. Lohr is thus distinguishable from cases, like this one, where ____ the device was subject to the premarket approval ("PMA") process, as the Lohr court itself noted. Id. at 1347 ____ ___ ("Appellee's heavy reliance on . . . King . . . is misplaced ____ because the device at issue in [that case] had undergone the full PMA process before it entered the market."). -17- 17 the damages they have undoubtedly suffered. The government has vigorously enforced the applicable criminal and civil laws. Nevertheless this decision may cause some, including those who enacted the law, to question whether complete preemption of private rights of action is the most fair and effective means of balancing the legitimate, competing interests of promoting innovation and reasonably assuring the safety of complex medical devices. It is axiomatic, however, that the courts must faithfully give effect to the intentions of Congress when they are clearly expressed by statute, as they have been in this case. Defendants' motion to dismiss, therefore, must be granted. Talbott, 865 F. Supp. at 40. _______ Affirmed. _________ -18- 18