Hazel **COMEAU** and Homer **Comeau, Plaintiff,**

v.

Louis **HELLER, M.D., Commonwealth of Massachusetts By and Through Its Agent University of Massachusetts Medical Center, D.A.N. Mascarenhas, M.D., and SciMed Inc., Defendants.**

Civil A. No. 96–40021NMG.

United States District Court, D. Massachusetts.

Nov. 6, 1996.

---

Robert H. Bowen, Bowen & Bowen, Lunenburg, MA, for Hazel Comeau, Homer Comeau.

Raymond J. Kenney, Gail L. Anderson, Martin, Magnuson, McCarthy & Kenney, Boston, MA, for Louis Heller, M.D., Commonwealth of Massachusetts.

Robert V. Deiana, Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, for D.A.N. Mascarenhas, M.D.

David F. Hassett, Healy & Rocheleau, Worcester, MA, for SciMed Inc.

## MEMORANDUM AND ORDER

GORTON, District Judge.

On September 30, 1993, the plaintiffs in the above-entitled action, Hazel and Homer Comeau, filed their complaint in this tort action against Louis Heller M.D. ("Dr. Heller") in Worcester County Superior Court. The Commonwealth of Massachusetts ("the Commonwealth"), D.A.N. Mascarenhas ("Dr. Mascarenhas") and SciMed Inc. ("SciMed") were added as additional party defendants in August 1994, January, 1995 and October, 1995, respectively.

The plaintiffs allege that the defendants, Dr. Heller, Dr. Mascarenhas and the Commonwealth, were negligent in their medical care and treatment of Hazel Comeau at or about the time she underwent coronary angioplasty at the University of Massachusetts Medical Center. The claims asserted against SciMed are for product liability arising out of its manufacture and sale of a medical catheter used in connection with Mrs. Comeau's coronary angioplasty surgery. The plaintiffs seek to recover from SciMed on theories of negligence, breach of warranty, failure to warn and instruct, violations of M.G.L. c. 93A and for loss of consortium.

In January, 1996, SciMed removed the state court action to this Court based upon the preemption provisions of the Medical Devices Amendments of 1976 to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 360 *et seq.* ("the MDA"). SciMed premised removal upon the "complete preemption" doctrine which it contends provides this court with federal question jurisdiction because the SciMed catheter is a medical device subject to regulation under the MDA. The plaintiffs filed a motion to remand this action back to the state court. That motion was denied on February 27, 1996, based upon the holdings in *Talbott v. C.R. Bard, Inc.,* 63 F.3d 25 (1st Cir.1995) and *Fisher v. C.R. Bard, Inc.,* 1996 WL 33818 (D.Mass.1996).

Since this Court ruled on plaintiffs' motion to remand, the United States Supreme Court has rendered its decision in *Medtronic, Inc. v. Lohr,* —— U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). That decision addresses the issue of "complete preemption" upon which this Court's subject matter jurisdiction in this action is based. Defendants Dr. Heller and the Commonwealth, have, consequently, moved to remand this case to the Worcester County Superior Court asserting that, after *Medtronic,* the "complete preemption" doctrine no longer affords this Court subject matter jurisdiction over these state law claims.

## I. *Factual Background*

In or about October, 1992, Mrs. Comeau was hospitalized at Burbank Hospital with a question of myocardial infarction. She was referred to the University of Massachusetts Medical Center for cardiac catheterization.

On or about October 16, 1992, a cardiac catheterization was performed by or at the direction of Dr. Peter Wilson. Three days later, the first of two coronary angioplasties was performed on Mrs. Comeau. Dr. Heller and Dr. Mascarenhas participated in that procedure sometime after which the plaintiff began to experience chest pains. An angiography disclosed a filling defect initially suspected to be a clot.

On or about October 23, 1992, Mrs. Comeau underwent a second angioplasty procedure. Again, Dr. Heller and Dr. Mascarenhas participated in the process and during the procedure Mrs. Comeau went into cardiac arrest necessitating both defibrillation and intubation. The plaintiff contends that she also suffered a stroke at that time.

Following the second angioplasty, Mrs. Comeau underwent bypass surgery immediately. During the surgery, Dr. Vander Salm, who performed the operation, discovered the obstruction in the filling defect was not a clot as originally suspected, but rather the plastic protective sheath from the angioplasty catheter allegedly left from the angioplasty performed a week earlier.

## II. *Analysis*

### A. *Removal Jurisdiction*

Scimed contends that this Court's exercise of removal jurisdiction is authorized by the fact that the catheter involved in this case is a "Class III" medical device subject to the regulatory scheme established by the MDA.

### 1. *The Well–Pleaded Complaint Rule*

Defendants, Dr. Heller and the Commonwealth, consistent with the Plaintiff's original motion to remand, maintain that a straightforward application of the "well-pleaded complaint" rule leads ineluctably to the conclusion that this Court lacks removal jurisdiction over the lawsuit. As a general rule, only state actions that originally could have been filed in federal court may be removed to federal court by a defendant. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987). Moreover, removal premised upon federal question jurisdiction generally is available only "when a federal complaint is presented on the face of the plaintiff's properly pleaded complaint." *Id.* The well-pleaded complaint rule thus ordinarily prohibits removal based upon a federal defense, even when the defense is preemption. *See Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Fisher v. C.R. Bard, Inc.*, 1996 WL 33818, at *2 (D.Mass., Jan. 3, 1996). Defendants, Dr. Heller and the Commonwealth, contend that SciMed's federal defense cannot therefore serve as the basis for removal jurisdiction.

### 2. *The Complete Preemption Doctrine*

The Supreme Court has determined that an "independent corollary" of the well-pleaded complaint rule exists: "if a federal cause of action completely pre-empts a state cause of action, [in which case] any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd. of Calif. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22–24, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983). Under the so-called "complete preemption" doctrine, therefore, a defendant may, in certain limited instances, remove a case to federal court even if no federal claims are presented on the face of the complaint. *Fisher*, 1996 WL 33818, at *2.

### 3. *Application of the Relevant Law Pre–Medtronic*

Defendants Dr. Heller and the Commonwealth acknowledge the existence of the "complete preemption" corollary to the well-pleaded complaint rule. They maintain, however, as did the plaintiffs in their original motion to remand, that the complete preemption doctrine is not applicable in the context of the MDA, citing this court to the recently-decided Supreme Court decision in *Medtronic, Inc. v. Lohr*. Upon careful consideration of that opinion, this Court concludes that, the

First Circuit's previous determination of the MDA's preemptive scope has been seriously curtailed.

The MDA includes the following preemption provision:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> > (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
> >
> > (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

In *Talbott v. C.R. Bard, Inc.*, 63 F.3d 25 (1st Cir.1995), the First Circuit held that the preemptive effect of the above-quoted clause is broad, observing that:

> To avoid the possibility of disuniform treatment, Congress placed enforcement authority in the FDA.... Centrally situated and with the requisite expertise, the FDA is in the best position to determine whether the provisions of the MDA have in fact been violated and to ensure that the law is applied in a uniform manner. (citation omitted). Given the FDA's central enforcement role, the preemptive scope of § 360k(a) becomes clear ... the express preemption provided by [that section] *manifests a decision by Congress to replace completely the private rights of action usually available under state law* with civil and criminal enforcement of the federal government when thoroughly regulated devices ... are at issue.

*Talbott,* 63 F.3d at 29–30 (internal quotation omitted; emphasis added).

In January 1996, Judge Wolf issued memoranda and orders in three related cases, *Fisher v. C.R. Bard, Inc.,* 1996 WL 33818 (D.Mass., January 3, 1996), *Shumaker v. C.R. Bard, Inc.,* 1996 WL 33828 (D.Mass., January 3, 1996), and *Turpin v. C.R. Bard, Inc.,* 1996 WL 33830 (D.Mass.1996). Each of those cases involved suits in which plaintiffs alleged various state law causes of action against the defendant catheter manufacturer. Relying on *Talbott,* Judge Wolf determined that the "complete preemption" doctrine applied to the plaintiffs' state law claims. Accordingly, the defendant in those cases "had a right to remove [the] inherently federal case[s] to a federal forum." *Fisher,* 1996 WL 33818 at *2.[1] Consistent with the clear prescription of the First Circuit in *Talbott* therefore, this Court denied plaintiff's original motion to remand on May 5, 1996.

## B. *The Medtronic Decision*

The plaintiff in *Medtronic, Inc. v. Lohr,* —— U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700, was the recipient of a pacemaker which is a Class III medical device approved for marketing under the MDA as a device "substantially similar" to devices already on the market. The question presented in *Medtronic* was whether the MDA preempts a state common-law negligence action against the manufacturer of an allegedly defective medical device. Justice Stevens, writing for a plurality, held that the claim of preemption made by defendant, Medtronic, was "not only unpersuasive [but] implausible." *Medtronic,* —— U.S. at ——, 116 S.Ct. at 2251. Specifically, Medtronic claimed that the plain language of the MDA preempts any and all common law claims brought by an injured

---

1. In addition to denying the plaintiffs' motions to remand, Judge Wolf in each case also dismissed the plaintiffs' claims as preempted by the MDA. Both Judge Wolf and the First Circuit acknowledged the apparent unfairness of this result:

> This is a particularly poignant case in which the heirs of a woman who died during angioplasty are being found not to have the right to seek compensation for the damages they have undoubtedly suffered. The government has vigorously enforced the applicable criminal and civil laws. Nevertheless this decision may

cause some, including those who enacted the law, to question whether complete preemption of private rights of action is the most fair and effective means of balancing the legitimate, competing interests of promoting innovation and reasonably assuring the safety of complex medical devices. It is axiomatic, however, that the courts must faithfully give effect to the intentions of Congress when they are clearly expressed by Congress, as they have been in this case.

*Talbott,* 63 F.3d at 31.

plaintiff against a manufacturer of a medical device. The Court concluded that:

> Medtronic's sweeping interpretation of the statute would require far greater interference with state legal remedies, producing a serious intrusion into state sovereignty.... Given the ambiguities in the statute and the scope of the preclusion that would occur otherwise, we cannot accept Medtronic's argument that by using the term "requirement", Congress clearly signaled its intent to deprive States of any role in protecting consumers....

*Id.* at ——, 116 S.Ct. at 2252. Justice Stevens determined that Congress "was primarily concerned with the problem of specific, conflicting State statutes and regulations rather than the general duties enforced by common-law actions" and that the legislative history "confirms our understanding that § 360k(a) simply was not intended to preempt most, let alone all, general common-law duties." *Id.* at ——, ——, 116 S.Ct. at 2252, 2253. In relevant part therefore, *Medtronic* holds that MDA preemption occurs only when a particular state requirement threatens to interfere with a specific federal interest. *Id.* at ——, 116 S.Ct. at 2257.

Justice Breyer wrote a separate opinion, concurring, in part, and with the judgment. His opinion states that "the MDA will sometimes pre-empt a state-law tort suit. I basically agree with Justice O'Conner's discussion of this point and with her conclusion." *Id.* at ——, 116 S.Ct. at 2259.

Justice O'Conner wrote an opinion in which the Chief Justice, and Justices Scalia and Thomas joined, concurring, in part, and dissenting, in part. Along with Justice Breyer, the Justice O'Conner contingent disagreed with the plurality's view that the MDA preempts "few, if any, common-law duties." *Id.* at ——, 116 S.Ct. at 2259. Nonetheless, the dissent concluded that neither the plaintiff's design claim nor a common-law claim alleging violation of federal requirements was preempted by the MDA. Therefore, as more fully discussed *infra,* a unanimous Supreme Court rejected the complete preemption argument proffered by the plaintiff in *Medtronic,* affirmed by the First Circuit in *Tal-*bott and argued for by SciMed in the case at bar.

### C. *Application of Medtronic to the Case at Bar*

Defendants have moved to remand on the grounds that *Medtronic* severely constricts the preemption argument asserted by SciMed. They seek a transfer back to the state court because they assert that, after *Medtronic,* the "complete preemption" doctrine no longer provides this Court with subject matter jurisdiction over plaintiffs' state law claims.

The defendants' argument has merit. Insofar as the First Circuit held in *Talbott* that private rights of action are "completely" preempted by civil and criminal enforcement of the federal government under § 360k(a) of the MDA, that holding no longer comports with the Supreme Court's preemption analysis. A unanimous Court in *Medtronic* held that at least some common law claims are not preempted by § 360k(a) of the MDA. Notwithstanding SciMed's argument, it follows ineluctably, therefore, that the "complete preemption" doctrine upon which this Court's jurisdiction is based no longer exists.

SciMed opposes the Motion to Remand on the grounds that *Medtronic* has been read over-broadly by the defendants, Dr. Heller and the Commonwealth. SciMed contends that even after *Medtronic,* § 360k(a) completely preempts state law claims because there is a significant distinction between the two different processes by which a medical device may enter the consumer market.

### 1. *Premarket Approval (PMA) v. Premarket Notification*

Enacted to provide for the safety and effectiveness of medical devices intended for human use, the MDA classifies such devices based on the risk they pose to the public. Class III devices pose the greatest risk and thus are subject to a rigorous premarket approval ("PMA") process. Most Class III devices on the market have not, however, been through the PMA process due to two statutory exceptions. Acknowledging that existing devices should not be withdrawn from the market while the Food and Drug

Administration ("FDA") completed extensive PMA analyses, Congress included a provision in the MDA to permit the continued distribution of pre–1976 devices pending subsequent FDA approval after the PMA process. The MDA also permits devices that are "substantially equivalent" to pre-existing devices to be marketed before completion of the onerous PMA process. The FDA reviews "substantially equivalent" devices by a process called "premarket notification" (also known as "the § 510(k) process").

The average evaluation time of a PMA application is 1,200 hours while the § 510(k) process involves approximately 20 hours. *Medtronic,* —— U.S. at ——, 116 S.Ct. at 2247. The pacemaker at issue in *Medtronic* was marketed after it was evaluated under the § 510(k) process while the heart catheter at issue in the case at bar entered the market only after completion of the more rigorous PMA process.

It is the distinction between the PMA process and the § 510(k) process that SciMed now points to in support of its claim that *Medtronic* does not apply to the case at bar. SciMed asserts that the discrete question of whether state law tort claims are preempted by § 360k(a) in cases involving Class III medical devices subjected to the PMA process was not before the Court in *Medtronic.* It reasons that the decision cannot, therefore, be read to suggest that the Supreme Court would so hold if the device at issue had been PMA approved. SciMed relies upon Justice Stevens' distinction of the PMA and § 510(k) processes and argues that such distinction should be "implicitly" read to limit application of the *Medtronic* decision to § 510(k) "substantially equivalent" devices.

### 2. *Conclusion*

The Supreme Court was well aware of the distinction between a PMA-approved device and a § 510(k)-approved device, yet it failed to limit the *Medtronic* holding to the latter. SciMed now asks this Court to read into that opinion what the Supreme Court failed to hold explicitly. This Court declines to engage in such a creative exercise.

A unanimous Supreme Court concurred that, at least to some extent, common law claims are not preempted by § 360k(a) of the MDA. Perhaps some of plaintiffs' claims are preempted by the MDA, but the sole inquiry of this Court for present purposes must be whether the MDA so totally occupies the field that common law tort claims are completely preempted. This Court concludes that after *Medtronic* the short answer to that complicated question is: "No". This conclusion rejects SciMed's complete preemption argument and leaves this Court without subject matter jurisdiction over these claims.

### ORDER

For the foregoing reasons:

1) the motion of defendants, Dr. Heller and the Commonwealth, to remand is **ALLOWED**;

2) the Clerk shall transfer this case to the Worcester County Superior Court Department of the Trial Court of Massachusetts; and

3) The Clerk shall mail to the Clerk of the designated Court a certified copy of this Order, the docket entries in this case and the originals of all papers on file in the case except the instant order.

So ordered.