WILLIAM J. HILES, Plaintiff-Appellee, v. NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant.

Fifth District    No. 5—93—0775

Opinion filed December 29, 1994.

Thomas W. Alvey, Jr., Kurt E. Reitz, and Mary Sue Juen, all of Thompson & Mitchell, of Belleville, for appellant.

Jeanne L. Sathre, of Meehling & Bernardoni, of Marshall, and Lance Callis, of Callis, Pape, Hale, Jensen, Jackstadt, Bailey & Halloran, of Granite City, for appellee.

JUSTICE WELCH delivered the opinion of the court:

On December 26, 1991, William J. Hiles (plaintiff), filed a one-count complaint against the Norfolk & Western Railway Company (defendant) in the circuit court of Madison County. Plaintiff brought his action under the Federal Safety Appliance Act (Safety Appliance Act) (45 U.S.C.S. § 1 *et seq.* (Law. Co-op 1981 & Supp. 1994)). In relevant part, it was alleged:

"3. That on July 18, 1990, the plaintiff *** was working as a

member of a switching crew located at Defendant's St. Louis Yard, at or near St. Louis, Missouri. At that time, in the course and scope of his duties, he was required to go between two railroad cars to straighten a misaligned drawbar and was injured attempting to 'straighten' said drawbar, all in violation in whole or in part of the aforesaid Safety Appliance Act."

On May 20, 1993, defendant filed an amended answer raising, *inter alia*, the affirmative defense that "plaintiff's claim that the drawbar or coupler was not aligned was a result of simple misalignment and not the result of defective equipment." Also on May 20, 1993, defendant filed a motion for summary judgment and a supporting memorandum of law. In pertinent part, defendant's memorandum states:

"Plaintiff has filed a cause of action for injuries allegedly resulting from realigning a drawbar between rail cars. Plaintiff *** has not presented any evidence of a defective drawbar or coupler system. Plaintiff claims per se liability under the Federal Safety Appliance Act based on a slewed drawbar.

[Defendant] has clearly established, through the Affidavit of General Foreman Walter A. Miller, Jr., the drawbar and coupler involved in the subject occurrence were not defective at the time of plaintiff's alleged injury. This evidence is uncontested.

If [defendant] can prove the slewed drawbar was cause [*sic*] by something other than defective equipment, it will avoid liability under the Safety Appliance Act."

The trial court denied defendant's motion for summary judgment. Relying on *Buskirk v. Burlington Northern, Inc.* (1982), 103 Ill. App. 3d 414, 431 N.E.2d 410 (railroad held liable as a matter of law under the Safety Appliance Act where employee went between railcars and injured his back while struggling to realign a drawbar that had failed to automatically couple), plaintiff filed a motion for directed verdict on May 20, 1993. According to plaintiff, the evidence was uncontradicted that "he went between two cars which failed to couple automatically and *** while aligning a misaligned drawbar, he was injured." As a result, plaintiff concluded that he was entitled to a directed verdict based upon this court's *Buskirk* decision.

The trial court agreed and granted plaintiff's motion for a directed verdict on the issue of liability. Defendant made an offer of proof that consisted of the testimony of two employees. Walter Miller, a general foreman, stated that his inspection did not reveal any kind of mechanical defect in the drawbar on the car involved in plaintiff's injury. Larry Fauver, a switchman who was working with plaintiff at the time of the injury, stated that the drawbar was slued. Defendant also submitted plaintiff's discovery deposition and certified questions and answers in support of the offer of proof.

On May 21, 1993, defendant filed a motion for a directed verdict at the conclusion of all the evidence. The trial court denied the motion, and the jury returned a verdict in favor of plaintiff. Defendant's post-trial motion was denied on October 21, 1993.

On appeal, defendant argues that the trial court erred: (1) by allowing plaintiff to present evidence of a *per se* violation of the Safety Appliance Act without requiring a showing of a defect in the drawbar or coupler and further erred by directing a verdict in favor of the plaintiff on the issue of liability; and (2) when it improperly excluded evidence that the misaligned drawbar was not caused by defective equipment or that it was caused by something other than defective equipment and further erred by denying the defendant's motions for directed verdict on the issue of its liability under the Safety Appliance Act. We disagree.

The operative section of the Safety Appliance Act upon which this case was tried makes it "unlawful for any such railroad [engaged in interstate commerce by railroad] to haul or permit to be hauled or used on its line any car not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." (45 U.S.C.S. § 2 (Law. Co-op Supp. 1994).) The purpose of section 2 is "to obviate the risks to employees by reason of their going between railroad cars to manually couple and uncouple them." *Leveck v. Consolidated R. Corp.* (1986), 148 Ill. App. 3d 118, 123, 498 N.E.2d 529, 532.

To get an idea of how the mechanics of "coupling" operate, we quote the following explanation:

> "Each rail car has a coupling mechanism located on each end which allows cars to be connected with other cars. The standard coupling mechanism consists of a knuckle attached to a drawbar. The drawbar is in turn attached to the rail car. The knuckle is a clamp which can be opened and closed as required and is designed to couple automatically with another knuckle on impact when the couplers are properly aligned. The drawbar has several inches of lateral play so that the rail cars can negotiate turns without derailing. However, because of the lateral play, the knuckles occasionally become misaligned and may fail to couple automatically upon impact. No device has been developed for wide-spread use that would automatically align the drawbars." *Goedel v. Norfolk & Western Ry. Co.* (4th Cir. 1994), 13 F.3d 807, 809.

It is well established that in construing the Federal Employer's Liability Act and the Safety Appliance Act, as with other Federal statutes, this court must look to Federal decisions for guidance and interpretation. (See, *e.g., Bailey v. Central Vermont Ry., Inc.* (1943),

319 U.S. 350, 352, 87 L. Ed. 1444, 1447, 63 S. Ct. 1062, 1063; *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1967), 38 Ill. 2d 31, 34, 230 N.E.2d 173, 176; *Templeton v. Chicago & North Western Transportation Co.* (1991), 211 Ill. App. 3d 489, 495, 570 N.E.2d 467, 471, *rev'd on other grounds* (1992), 151 Ill. 2d 325, 603 N.E.2d 441.) Two purposes are served by a rule requiring application of Federal decisional law: (1) preventing the erosion of rights conferred by Federal law and (2) achieving uniformity. *Bowman v. Illinois Central R.R. Co.* (1957), 11 Ill. 2d 186, 226, 142 N.E.2d 104, 127.

At the outset, we note that there is no uniformity in the case law on the issue of whether a misaligned drawbar, absent evidence of defective coupling equipment, constitutes a violation of the Safety Appliance Act. "The malfunctioning and misalignment of rail car couplers has received varied treatment from the federal courts over the years." (*Goedel*, 13 F.3d at 810.) There are two lines of cases addressing this issue.

Under one line of cases, there is no violation of the Safety Appliance Act if the coupling equipment is nondefective. Thus, the existence of a misaligned drawbar, in the absence of proof of defective coupling equipment, is not a violation of the Safety Appliance Act. *Kavorkian v. CSX Transportation, Inc.* (6th Cir. 1994), 33 F.3d 570, 573; *Lisek v. Norfolk & Western Ry. Co.* (7th Cir. 1994), 30 F.3d 823; *Goedel*, 13 F.3d at 811-12; *Reed v. Philadelphia, Bethlehem & New England R.R. Co.* (3d Cir. 1991), 939 F.2d 128, 132; *Maldonado v. Missouri Pacific Ry. Co.* (5th Cir. 1986), 798 F.2d 764, 768.

Under the second line of cases, to which two Federal circuits currently adhere, a railroad is liable for injuries under the Safety Appliance Act when cars fail to automatically couple due to a misaligned drawbar. (*Coleman v. Burlington Northern, Inc.* (8th Cir. 1982), 681 F.2d 542, 544-45; *Metcalfe v. Atchison, Topeka & Santa Fe Ry. Co.* (10th Cir. 1974), 491 F.2d 892, 896-97; *Kansas City Southern Ry. Co. v. Cagle* (10th Cir. 1955), 229 F.2d 12, 14-15.) As the Seventh Circuit recently observed in *Lisek*, "The state courts have *** overwhelmingly held that a failure to couple due to drawbar misalignment constitutes a violation of the [Safety Appliance Act]." *Lisek*, 30 F.3d at 827 (citing cases from California, Illinois, Michigan, Minnesota, Missouri, Montana, New York, and Utah).

This court has repeatedly held that a railroad is liable as a matter of law under the Safety Appliance Act when an employee goes between railcars and is injured while attempting to force back into position a drawbar that has failed to automatically couple, regardless of whether the coupling equipment is defective. *Pry v. Alton & Southern Ry. Co.* (1992), 233 Ill. App. 3d 197, 214, 598 N.E.2d 484, 496; *Leveck,*

148 Ill. App. 3d at 123, 498 N.E.2d at 532; *Reynolds v. Alton & Southern Ry. Co.* (1983), 115 Ill. App. 3d 88, 95, 450 N.E.2d 402, 408; *Buskirk*, 103 Ill. App. 3d at 415, 431 N.E.2d at 412.

■ The principal question in this case is whether this court should, as defendant suggests, abandon our longstanding authority permitting a plaintiff such as Hiles to recover under the Safety Appliance Act for injuries sustained while attempting to align a misaligned drawbar. Having carefully considered all the applicable cases and the arguments advanced by the parties, we decline defendant's invitation to overrule *Buskirk*.

There is currently no uniformity among the Federal circuits on the question raised in this case. We are not required, as defendant intimates throughout its brief, to follow the rule enunciated by the Third, Fourth, Fifth, Sixth, and Seventh Circuits. Until such time as the Eighth and Tenth Circuits overrule *Coleman* and *Metcalfe*, or until the United States Supreme Court resolves the issue, we will adhere to *Buskirk* and the line of Federal cases upon which it is predicated.

■ Because we have resolved the first issue in plaintiff's favor, the outcome of the second issue is preordained. Plaintiff was entitled to a directed verdict on the issue of liability. (See *Reynolds*, 115 Ill. App. 3d at 95, 450 N.E.2d at 408; *Buskirk*, 103 Ill. App. 3d at 415, 431 N.E.2d at 412.) All a plaintiff such as Hiles is required to show in order to obtain a directed verdict on the issue of liability is that: (1) railroad cars failed to couple automatically and (2) he went between the cars and was injured while trying to straighten a misaligned drawbar. (*Buskirk*, 103 Ill. App. 3d at 415, 431 N.E.2d at 412.) Plaintiff met these requirements in the instant case and was thus entitled to a directed verdict. Based upon our review of the record, the trial court did not err in granting a directed verdict on the issue of liability. See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (directed verdict is proper only when all of the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on the evidence could ever stand).

For the aforementioned reasons, we hereby affirm the judgment entered by the circuit court of Madison County.

Affirmed.

GOLDENHERSH and LEWIS, JJ., concur.