Doris **HERRING**, Guardian of the Person and the Estate of Zettie Jones, NCM, Appellant,

v.

**TELECTRONICS PACING SYSTEMS, INC.,** Appellee.

No. 09–96–197 CV.

Court of Appeals of Texas, Beaumont.

Submitted Dec. 11, 1997.

Decided March 5, 1998.

Darrin Walker, Law Offices of George Chandler, Lufkin, for appellant.

James D. Ebanks, John B. Wallace, Giessel, Barker & Lyman, Houston, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

Appellant, Doris Herring, Guardian of the Person and the Estate of Zettie Jones, NCM, filed suit against appellee, Telectronics Pacing Systems, Inc., alleging that a Telectronics pacemaker implanted in Herring's mother for less than one year did not function properly. The trial judge granted Telectronics summary judgment based on federal preemption.

Factually, Zettie Jones, mother of appellant, had a Telectronics pacemaker implanted for purposes of assisting in the control of her heart beat. Approximately one year following implant, the pacemaker was replaced with another Telectronics pacemaker. Appellant's primary complaint rests with the first pacemaker, contending that same did not function properly.

In the lawsuit below, appellant sued for negligence, strict product liability, gross negligence, and violation of the Texas Deceptive Trade Practices—Consumer Protection Act. Basically, appellant contends that Telectronics provided Zettie Jones a defective pacemaker, failed to adequately assure the quality of the pacemaker and failed to monitor the pacemaker as promised by appellee.

 The trial court granted Telectronics's summary judgment motion on the specific issue of federal preemption, with said conclusion of law reflected in its written order granting the summary judgment. When a trial court's summary judgment order explicitly *specifies* the ground relied on for the summary judgment ruling, the summary judgment can only be affirmed if the theory relied on by the trial court is meritorious, otherwise the case must be remanded. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). As the issue before us is purely a question of law, and does not involve a review of the record for the presence or absence of "any genuine issue of material fact," factual contentions of either party, such as Telectronics's claim that the pacemaker in question was subjected to rigorous testing requirements, will be ignored.

The federal provision in question is found in 21 U.S.C.A. § 360k(a) (Supp.1997). The trial court included the provision in its summary judgment order. Section 360k(a) reads as follows:

**(a) General rule**

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

Herring concedes that the design, manufacture, and distribution of the pacemaker in question is governed by the Medical Device Amendments of 1976(MDA) to the Food, Drug, and Cosmetics Act. Section 360k(a) is contained in the MDA.[1]

We see the issue before us framed in an identical manner as was the issue before the

---

1. For a detailed history of the Federal Government's attempts to provide protection for the health and safety of its citizens, see *Medtronic, Inc. v. Lohr*, 518 U.S. 470, ———–———, 116 S.Ct. 2240, 2245–48, 135 L.Ed.2d 700, 709–12 (1996).

United States Supreme Court in *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). As we appreciate their briefs, both Herring and Telectronics recognize *Lohr* as the controlling case on this issue as the facts in that case (*Lohr's* pacemaker failed requiring emergency surgery to replace) are quite similar to the facts in the instant case. The plaintiffs in *Lohr* sued under theories of negligence, strict liability, and breach of warranty. The defendant in *Lohr* removed the case to federal district court which granted a summary judgment in favor of said defendant. The federal district court's basis for the summary judgment was that § 360k(a) preempted the plaintiffs's state tort causes of action. *Id.*, at ——, 116 S.Ct. at 2248–49, 135 L.Ed.2d at 713. Appellee condenses the issue in the *Lohr* decision as follows:

> In *Lohr*, the U.S. Supreme Court took its first look at the MDA and preemption, but only in the context of a device that had been grandfathered under a pre–1990 § 510(k) notification.

Our reading of *Lohr* leads us to an entirely different observation. The plurality opinion of Justice Stevens in no way restricts its holding to the particular facts of the case. Instead, Stevens frames the issue before the Court very clearly in the following language:

> As in *Cipollone v. Liggett Group, Inc.*, we are presented with the task of interpreting a statutory provision that expressly pre-empts state law. While the pre-emptive language of § 360k(a) means that we need not go beyond that language to determine whether Congress intended the MDA to pre-empt at least some state law, we must nonetheless "identify the domain expressly pre-empted" by that language.

*Id.*, at ——, 116 S.Ct. at 2250, 135 L.Ed.2d at 715 (citations omitted). The plurality opinion clearly framed the issue as one of divining Congressional intent without regard to the status ("grandfathered," "substantially equivalent," or full "premarket approval" [PMA]) of the device in question.[2]

The*Lohr* plurality went on to recognize two presumptions about the nature of federal preemption laws. First, because the States are independent sovereigns in the federal system, the Court has traditionally started with the assumption that the historic police powers of the States were not to be superseded by federal legislation unless that was the "clear and manifest purpose of Congress." *Id.* Second, the Court's analysis of the scope of a preemption statute is guided by its observation that "the purpose of Congress is the ultimate touchstone in every preemption case." *Id.*, ——, 116 S.Ct. at 2250, 135 L.Ed.2d at 716. The conclusion reached by the Stevens plurality was that the Lohr's common law theories of recovery were not preempted by § 360k(a). In response to Medtronic's contention that any common law cause of action was establishing a "requirement" in direct violation of § 360k(a), a position also taken by instant appellee, the Stevens plurality responded with the following:

> Medtronic's argument is not only unpersuasive, it is implausible. Under Medtronic's view of the statute, Congress effectively precluded state courts from affording state consumers any protection from injuries resulting from a defective medical device. Moreover, because there is no explicit private cause of action against manufacturers contained in the MDA, and no suggestion that the Act created an implied private right of action, Congress would have barred most, if not all, relief for persons injured by defective medical devices. Medtronic's construction of § 360k would therefore have the perverse effect of granting complete immunity from design defect liability to an en-

2. Only days before the instant opinion was filed, appellees provided us with the long-awaited decision by the Texas Supreme Court in *Tempie Fortson Worthy v. Collagen Corporation*, 967 S.W.2d 361 (Tex. Feb. 13, 1998). While we have serious concerns with certain factual representations of the *Lohr* case by Justice Hecht, especially the alignment of Justice Breyer with Justice O'Connor's lead *minority* opinion so as to place what is clearly the *Lohr's* minority views on its interpretation of the Congressional intent of § 360k(a), *Tempie Fortson Worthy*, at ——, we nevertheless feel that a careful reading of *Tempie Fortson Worthy* leads us to conclude that our subsequent analysis of *Lohr* is sound, and that *Tempie Fortson Worthy* is distinguishable from the facts and circumstances of our case, which is much closer to the circumstances in *Lohr. See Tempie Fortson Worthy*, at ——.

tire industry that, in the judgment of Congress, needed more stringent regulation in order "to provide for the safety and effectiveness of medical devices intended for human use," 90 Stat. 539 (preamble to Act). It is, to say the least, "difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct," *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 251, 104 S.Ct. 615, 622–23, 78 L.Ed.2d 443 (1984), and it would take language much plainer than the text of § 360k to convince us that Congress intended that result.

*Id.*, at —— ——, 116 S.Ct. at 2251, 135 L.Ed.2d at 716–17 (footnote omitted).

The "total preemption" position of Medtronic, and of the instant appellee, was completely put to rest by the plurality's following summary of its examination of the basic purpose of the legislation as well as its history:

> The MDA was enacted "to provide for the safety and effectiveness of medical devices intended for human use." 90 Stat. 539. Medtronic asserts that the Act was also intended, however, to "protect innovations in device technology from being 'stifled by unnecessary restrictions,'" [citation to brief omitted] and that this interest extended to the pre-emption of common-law claims. While the Act certainly reflects some of these concerns, the legislative history indicates that any fears regarding regulatory burdens were related more to the risk of *additional* federal and state regulation rather than the danger of preexisting duties under common law. See, *e.g.*, 122 Cong. Rec. 5850 (Mar. 9, 1976)(statement of Rep. Collins)(opposing further "redundant and burdensome Federal requirements"); *id.*, at 5855 (discussing efforts taken in MDA to protect small businesses from the additional requirements of the Act). Indeed, nowhere in the materials relating to the Act's history have we discovered a reference to a fear that product liability actions would hamper the development of medical devices. To the extent that Congress was concerned about protecting the industry, that intent was manifested primarily through fewer sub-

stantive requirements under the Act, not the pre-emption provision; furthermore, any such concern was far outweighed by concerns about the primary issue motivating the MDA's enactment: the safety of those who use medical devices.

> The legislative history also confirms our understanding that § 360(k) [sic] simply was not intended to pre-empt most, let alone all, general common-law duties enforced by damages actions. There is, to the best of our knowledge, nothing in the hearings, the committee reports, or the debates suggesting that any proponent of the legislation intended a sweeping pre-emption of traditional common-law remedies against manufacturers and distributors of defective devices. If Congress intended such a result, its failure even to hint at it is spectacularly odd, particularly since Members of both Houses were acutely aware of ongoing product liability litigation. Along with the less-than-precise language of § 360k(a), that silence surely indicates that at least some common-law claims against medical device manufacturers may be maintained after the enactment of the MDA.

*Id.*, at —— – ——, 116 S.Ct. at 2253, 135 L.Ed.2d at 718–19 (footnotes omitted).

In *Lohr*, three other justices joined with Justice Stevens in his opinion. Four justices went in the opposite direction by finding that state common law damage actions were preempted as such actions "operate to require manufacturers to comply with common-law duties." *Id.*, at ——, 116 S.Ct. at 2262, 135 L.Ed.2d at 731. Justice Breyer was cast in the role of the "swing vote." Appellee attempts a very strained grafting procedure by attaching Justice Breyer to the "total preemption" group of justices. This is to completely misread Justice Breyer's concurring opinion. Breyer finds that § 360k(a) will "sometimes" preempt a state common law tort action. This is based upon a somewhat subjective interpretation of the word "requirement" in § 360k(a) to include the application, "in particular circumstances," of a State's tort laws. *Id.*, at ——, 116 S.Ct. at 2259–60, 135 L.Ed.2d at 727. As an example, Breyer then poses a hypothetical in which

the MDA regulation requires a 2–inch wire as a hearing aid component while a state regulation requires a 1–inch wire. Since § 360k(a) would clearly preempt the state regulation, Breyer asks "why would it not similarly pre-empt a state law tort action that premises liability upon the defendant manufacturer's failure to use a 1–inch wire (say, an award by a jury persuaded by expert testimony that use of more than 1–inch wire is negligent)? The effects of the state agency regulation and the state tort suit are identical." *Id.*

Following these basic observations in support of his general holding that § 360k(a) can "sometimes" preempt state common law actions, Breyer's opinion next recognizes that § 360k(a) is "highly ambiguous." *Id.*, at ——, 116 S.Ct. at 2260, 135 L.Ed.2d at 728. In his search for Congressional intent, Breyer observes that the Food and Drug Administration (FDA) is responsible for administering the MDA and, therefore, promulgating specific regulations designed to help translate Congress's preemptive intentions. *Id.* Breyer relies on one such FDA regulation, 21 C.F.R. § 808.1(d) (1995), which he quotes as follows:

> State ... requirements are preempted only when ... there are ... *specific* [federal] requirements applicable to a particular device ... thereby making any existing *divergent* State ... requirements applicable to the device different from, or in addition to, the *specific* [federal] requirements.

*Id.*, at ———– ——, 116 S.Ct. at 2260–61, 135 L.Ed.2d at 728–29 (alteration in original).

Interpreting § 360k(a) and § 808.1(d) in light of "basic pre-emption principles," *Id.*, at ——, 116 S.Ct. at 2261–62, 135 L.Ed.2d at 730, Breyer concludes by stating that he "can find no actual conflict between any federal requirement and any of the liability-creating-premises of the plaintiffs' state law tort suit[.]" He then announces his concurrence in the judgment of the Stevens plurality. *Id.*

In *Lohr*, the plaintiffs alleged, under the negligence count, "breach of Medtronic's 'duty to use reasonable care in the design, manufacture, assembly, and sale of the subject pacemaker' in several respects, including the use of defective materials in the lead and a failure to warn or properly instruct the plaintiff or her physicians of the tendency of the pacemaker to fail, despite knowledge of other earlier failures." *Id.*, 135 L.Ed.2d at 713. The strict liability paragraph "alleged that the device was in a defective condition and unreasonably dangerous to foreseeable users at the time of its sale." *Id.*

In the instant case, appellant's DTPA cause of action alleges appellee sold appellant a defective pacemaker, then did not monitor to discover its malfunction; and breached express and implied warranties to appellant that the pacemaker was of merchantable quality and suited to the purpose for which it was intended. In their negligence cause of action, appellant alleges that the appellee failed to assure the quality of the pacemaker, as a person exercising ordinary care would have done under same or similar circumstances; failed to monitor the pacemaker as appellee represented it would, as someone exercising ordinary care would have done; failed to timely notify the patient or her family of the defective condition of the pacemaker, as a person exercising ordinary care would have done; and failed to attempt to notify the patient or her family of the defective condition of the pacemaker, as a person of ordinary care would have done. The strict liability cause of action alleged the pacemaker was defective and unreasonably dangerous to the user or consumer at the time it was introduced into the stream of commerce by appellee, and such unreasonably dangerous condition was foreseeable by appellee. A gross negligence paragraph was also included in appellant's petition alleging blatant and wanton conduct on the part of appellee with regards to the rights of the patient.

In examining appellee's motion for summary judgment, we must agree with appellant's observation that in taking an absolutist position on the issue of preemption, appellee "never attempted to show how state laws under which Mrs. Herring's claims were brought would impose requirements different from those imposed by the MDA. Instead, Telectronics based its motion entirely on the premise that, as a matter of law, no person injured by a pacemaker can ever sue the

manufacturer." We also note that appellee's motion for summary judgment does not reference *Lohr* either as authority supporting its position, or by attempting to distinguish it from the instant cause of action.

 Relying on the interpretation of § 360k(a) by five justices (the Stevens plurality and Justice Breyer) in *Lohr*, we find error in the trial court's interpretation of § 360k(a) as we too can find no conflict between any federal requirement raised by appellee and any of appellant's particular state theories of recovery. We therefore reverse the judgment of the trial court and remand the case to said court for further proceedings.

REVERSED AND REMANDED.