HAROLD WEILAND, Plaintiff-Appellant, v. TELECTRONICS PACING SYSTEMS, INC., Defendant-Appellee.

First District (5th Division)   No. 1—95—2736

Opinion filed December 11, 1998.

176

ZWICK, J., dissenting.

Carponelli & Krug, of Chicago (Stephen P. Carponelli, Albert M.T. Finch III, and Gregory J. Chinlund, of counsel), for appellant.

Paul E. Chronis, of McDermott, Will & Emery, of Chicago, and Feldman, Gale & Weber, P.A., of Miami, Florida (Michael J. Weber, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Harold Weiland brought suit against defendant Telectronics Pacing Systems, Inc., alleging claims for breach of warranty and product liability regarding two pacemakers implanted into his body. The circuit court granted summary judgment to the defendant on the claims because it determined that those claims were preempted by the Medical Device Amendments of 1976 (MDA) (21 U.S.C.A. §§ 360c through 360k (West Supp. 1998)) to the Federal Food, Drug, and Cosmetic Act (FDCA) (21 U.S.C.A. § 301 *et seq.* (West Supp. 1998)). Plaintiff appealed.

For the reasons that follow, we affirm.

On July 26, 1993, plaintiff filed a third amended complaint against Telectronics Proprietary, Ltd. (TPL), Telectronics Pacing Systems, Inc. (TPSI), and Alexian Brothers Medical Center, Inc. (Alexian), alleging breach of warranty and product liability claims against each defendant and loss of consortium for plaintiff's wife. According to the complaint, prior to January 1991, plaintiff suffered from a heart ailment. He sought treatment from Alexian and was diagnosed with heart disease. In January 1991, a pacemaker, model 8222, was surgically implanted into plaintiff. The pacemaker was designed and manufactured by TPL and sold to its distributor, TPSI, which in turn sold it to Alexian. Plaintiff alleged that the pacemaker malfunctioned, causing him to suffer various physical problems as well as general mental and psychological distress. The pacemaker was removed and a new pacemaker, model 1230, was implanted. This pacemaker was also manufactured by TPL, sold to TPSI, and resold to Alexian.

Plaintiff alleged that TPSI impliedly warranted that the pacemakers were merchantable and fit for the particular purpose for which they were intended and that they failed to meet those warranties. He further alleged that the two pacemakers were defective in design and construction, the defective condition existed at the time they left TPSI's possession, and the pacemakers were defective when they were sold to Alexian and, ultimately, to plaintiff. Plaintiff claimed that as a result of the defect he suffered adverse cardiac reaction, mental and physical pain, and psychological strain and anguish. He underwent surgical procedures to have the pacemakers removed and replaced with related devices.

Plaintiff's complaint noted that on December 31, 1991, the Department of Health and Human Services' Food and Drug Administration issued a recall of the model 8222 pacemaker.

On October 12, 1993, TPL was dismissed from the case without prejudice. Plaintiff later stipulated to the dismissal of the claims against Alexian with prejudice.

On July 6, 1995, the circuit court granted summary judgment to TPSI on the claims against it, counts II and V of the third amended complaint. During the hearing on the motion, the court stated that it found the claims preempted by federal law "in that they seek to impose requirements on the manufacturer that relate to the safety and effectiveness of a class III device that are different from and in addition to the requirements imposed by the medical device amendment[s]."

Plaintiff now appeals this ruling, arguing that the claims are not preempted by the MDA. The matter was held in abeyance pending resolution of *Haudrich v. Howmedica, Inc.*, 267 Ill. App. 3d 630 (1994), in the Illinois Supreme Court, pending resolution of *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 135 L. Ed. 2d 700, 116 S. Ct. 2240 (1996), in the Supreme Court of the United States, and pending resolution of a petition for certiorari for *Kernats v. Smith Industries Medical Systems, Inc.*, 283 Ill. App. 3d 455 (1996), *appeal denied*, 169 Ill. 2d 569 (1996), *cert. denied*, 520 U.S. 1208, 139 L. Ed. 2d 631, 118 S. Ct. 684 (1998). The Illinois Supreme Court decided *Haudrich* without reaching the issue of whether the Medical Device Amendments of 1976 preempted state claims. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525 (1996) (preemption issue waived by failure to raise to court below). The Supreme Court's decision in *Medtronic* and this court's ruling in *Kernats* are discussed below.

■ Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996). The standard of review is *de novo*. *Busch*, 169 Ill. 2d at 333.

The outcome of this case involves the interpretation of the MDA as well as several decisions interpreting the MDA, including *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 135 L. Ed. 2d 700, 116 S. Ct. 2240 (1996); *Kernats v. Smith Industries Medical Systems, Inc.*, 283 Ill. App. 3d 455 (1996), *appeal denied*, 169 Ill. 2d 569 (1996), *cert. denied*, 520 U.S. 1208, 139 L. Ed. 2d 631, 118 S. Ct. 684 (1998), and *Mitchell v. Collagen Corp.*, 126 F.3d 902 (7th Cir. 1997), *cert. denied*, 523 U.S. 1020, 140 L. Ed. 2d 467, 118 S. Ct. 1300 (1998).

Plaintiff contends the circuit court erred in determining that the MDA preempted his claims for breach of implied warranty and product liability, and relies on this court's opinion in *Kernats*, which appears on point with regard to the preemption of his claims. Defendant argues, however, that this court should reconsider *Kernats* because it misconstrued the United States Supreme Court decision in *Medtronic* and, in light of subsequent federal decisions, hold these claims preempted by the MDA.

■ The MDA classifies medical devices into three categories based on the risk they pose to the public. See 21 U.S.C.A. § 360c (West Supp. 1998); see generally *Medtronic*, 518 U.S. at 476-77, 135 L. Ed. 2d at 710, 116 S. Ct. at 2246; *Kernats*, 283 Ill. App. 3d at 459-60. Class III devices, which are at issue here, present "a potential unreasonable risk of illness or injury" and are subject to the most stringent MDA controls. 21 U.S.C.A. § 360c(a)(1)(C) (West Supp. 1998). To market a class III device, a manufacturer must provide the FDA with a "reasonable assurance" that the device is both safe and effective. 21 U.S.C.A. § 360e(d)(2) (West Supp. 1998). Manufacturers must obtain premarket approval (PMA) through a rigorous process that requires them to submit detailed information regarding the safety and efficacy of their medical devices. See *Medtronic*, 518 U.S. at 477, 135 L. Ed. 2d at 710-11, 116 S. Ct. at 2246-47.

Exceptions to the PMA requirement allow some class III devices to reach the marketplace without PMA review. A "grandfather" provision allows pre-1976 medical devices to remain on the market until such time as the FDA initiates and completes the requisite PMA. See 21 U.S.C.A. § 360e(b)(1)(A) (West Supp. 1998); 21 C.F.R. § 814.1(c)(1) (1998). The MDA also allows devices that are "substantially equivalent" to preexisting devices to avoid the PMA process. See 21 U.S.C.A. § 360e(b)(1)(B) (West Supp. 1998); see generally *Medtronic*, 518 U.S. at 478, 135 L. Ed. 2d at 711, 116 S. Ct. at 2247. Under the "substantially equivalent" exception, manufacturers must submit to a limited form of review known as "premarket notification," which allows the device to be marketed without further regulatory analysis if the FDA decides that it is "substantially equivalent" to a preexisting device. Plaintiff

does not suggest that the devices here are under the "substantial equivalent" exception.

Because the pacemakers implanted into plaintiff fall under class III, defendant was required to provide a "reasonable assurance" that the device was both safe and effective. Defendant asserts that the two pacemakers at issue here underwent the PMA review process. With this background, we must decide whether the MDA preempts plaintiff's claims.

The supremacy clause of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Where state law conflicts with federal law, the state law is " 'without effect.' " *Busch*, 169 Ill. 2d at 334, quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 68 L. Ed. 2d 576, 595, 101 S. Ct. 2114, 2128 (1981).

When analyzing a preemption question, there is an assumption that a federal law will not supersede the historic police powers of the states unless the purpose of Congress is clear and manifest. *Kernats*, 283 Ill. App. 3d at 460-61, citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 422, 112 S. Ct. 2608, 2617 (1992); *Medtronic*, 518 U.S. at 485, 135 L. Ed. 2d at 715, 116 S. Ct. at 2250. Unless there is an express congressional command, state law is preempted if that law actually conflicts with federal law or if federal law so thoroughly occupies the legislative field as to make reasonable the inference that Congress left no room for the states to supplement it. *Kernats*, 283 Ill. App. 3d at 461, citing *Cipollone*, 505 U.S. at 516, 120 L. Ed. 2d at 423, 112 S. Ct. at 2617.

Section 360k(a) of the MDA contains a preemption provision, which provides, in pertinent part:

"[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter." 21 U.S.C.A. § 360k(a) (West Supp. 1998).

In *Medtronic*, the Supreme Court interpreted this section with respect to state-law claims involving a pacemaker marketed as a device that was "substantially equivalent" to products already on the market and not a device that underwent the full PMA process to which the pacemakers here were subjected. *Medtronic*, 518 U.S. at 480, 135 L. Ed. 2d at 712, 116 S. Ct. at 2248. When the pacemaker failed, the

Lohrs sued Medtronic for breach of its duty to use reasonable care in the design, manufacture, assembly and sale of the pacemaker, as well as for failing to warn and adequately instruct as to the pacemaker's tendency to fail. Their strict liability claim alleged that the device was in a defective condition and unreasonably dangerous at the time of sale. A deeply divided Supreme Court held that none of the Lohrs' claims were preempted by the MDA. *Medtronic*, 518 U.S. at 503, 135 L. Ed. 2d at 726, 116 S. Ct. at 2259. Because of the several concurring and dissenting opinions in that case, the precise precedence of *Medtronic* is difficult to discern.

All nine Justices agreed that the claims alleging negligent design were not preempted by the MDA's substantial equivalency requirement, which was employed on the pacemaker in that case. This notification process, observed Justice O'Connor, merely determines whether the device in question is the substantial equivalent of another device already on the market. It places no "requirement" on the device. *Medtronic*, 518 U.S. at 513, 135 L. Ed. 2d at 733, 116 S. Ct. at 2264 (O'Connor, J., concurring in part & dissenting in part, joined by Rehnquist, C.J., & Scalia & Thomas JJ.).

Justice Stevens, with Justices Kennedy, Souter, Ginsberg, and Breyer, also held that the claims alleging negligent manufacturing and failure to warn were not preempted despite federal manufacturing and labeling requirements for medical devices. *Medtronic*, 518 U.S. at 497-502, 135 L. Ed. 2d at 723-26, 116 S. Ct. at 2256-58. The Court found those federal requirements to be general requirements and not "specific" so as to trigger the preemption section.

The *Medtronic* Court disagreed as to whether a state common law duty is or can be a "requirement" that would invoke the preemption section. Justice Stevens, with Justices Kennedy, Souter, and Ginsberg, stated that the argument that all common law actions were "requirement[s]," and thus preempted, was "implausible." *Medtronic*, 518 U.S. at 486-87, 135 L. Ed. 2d at 716, 116 S. Ct. at 2251. If that were the case, the Justices concluded, this section would have in effect granted complete immunity from design defect liability to an entire industry that, in the judgment of Congress, needed more stringent regulation to provide for the safety and effectiveness of medical devices. *Medtronic*, 518 U.S. at 487, 135 L. Ed. 2d at 716-17, 116 S. Ct. at 2251. The Justices did not believe that was Congress' intent. They concluded that the Court need not determine whether common law actions are never "requirements" within the meaning of section 360k and it would be "rare" for such an action to have the effect of establishing substantive requirements for a specific device. *Medtronic*, 518 U.S. at 502-03, 135 L. Ed. 2d at 726, 116 S. Ct. at 2259.

Justice Breyer wrote separately, stating that ordinarily section 360k(a) preempted state requirements embodied in a state statute, rule, regulation, or other administrative action, and it would also preempt a similar requirement that takes the form of a standard of care or behavior imposed by a state law tort action. *Medtronic*, 518 U.S. at 504-05, 135 L. Ed. 2d at 727, 116 S. Ct. at 2260 (Breyer, J., concurring in part & dissenting in part).

Justice O'Connor, with Chief Justice Rehnquist and Justices Scalia and Thomas, determined that section 360k(a) preempted any state common law action that would impose a requirement "different from, or in addition to" a requirement under the FDCA. *Medtronic*, 518 U.S. at 509, 135 L. Ed. 2d at 730, 116 S. Ct. at 2262 (O'Connor, J., concurring in part & dissenting in part, joined by Rehnquist, C.J., & Scalia & Thomas, JJ.), (with Breyer's concurrence, this would make a majority of Justices agreeing on this point). These Justices also disagreed with Stevens on the issue of whether the negligent manufacturing and failure to warn claims were preempted by section 360k(a), concluding that "[s]ome, if not all, of the Lohrs' common-law claims regarding the manufacturing and labeling of Medtronic's device would compel Medtronic to comply with requirements different from, or in addition to, those required by the FDA." *Medtronic*, 518 U.S. at 513, 135 L. Ed. 2d at 733, 116 S. Ct. at 2264 (O'Connor, J., joined by Rehnquist, C.J., & Scalia & Thomas, JJ.).

This court discussed *Medtronic* in *Kernats*, 283 Ill. App. 3d at 461-64, recognizing that the *Medtronic* decision was divided as to whether state common law damages actions could ever be preempted by the MDA. The plaintiff in *Kernats* alleged various claims related to a medical device, a CVS catheter, that had undergone PMA review and obtained FDA approval for its safety and effectiveness. This court concluded that the PMA process was a specific federal requirement. *Kernats*, 283 Ill. App. 3d at 465.

The *Kernats* court then looked to the nature of the state requirements and stated that the *Medtronic* Court "held that common-law claims challenging the manufacturing and labeling of medical devices were not preempted by the MDA because they were simply 'general obligations' imposed by the state on manufacturers; they were not state requirements specifically developed 'with respect to' medical devices." *Kernats*, 283 Ill. App. 3d at 465, quoting *Medtronic*, 518 U.S. at 501-02, 135 L. Ed. 2d at 725-26, 116 S. Ct. at 2258. The court determined that the claims based on the manufacture of the CVS catheter, the failure to warn and inadequate instruction, and the claims for defective design and inadequate testing arose from "general obligations" applicable to all manufacturers and were "not the sort of

state requirement that section 360k was intended to preempt." *Kernats*, 283 Ill. App. 3d at 465-66. Therefore, the court found no preemption for those claims despite the PMA review.

As to claims for breach of express and implied warranties, which the *Medtronic* Court did not address, the *Kernats* court noted that the FDA regulations provide, as an example of a permissible general requirement, that the Uniform Commercial Code (UCC) (810 ILCS 5/2—314, 2—315 (West 1994)) warranty of fitness is not preempted. *Kernats*, 283 Ill. App. 3d at 466, citing 21 C.F.R. § 808.1(d)(1) (1995). The court concluded that because these state requirements were of "general applicability," and not "specifically developed 'with respect to' medical devices," they also did not fall "within the purview of section 360k." *Kernats*, 283 Ill. App. 3d at 466-67.

Based on the *Kernats* analysis, plaintiff in this case contends that his claims were not preempted by the MDA despite the fact that the devices went through the PMA process. He states that because the federal regulations point to the UCC warranty of fitness as an example of a permissible general requirement and because the UCC's requirements are of "general applicability" and not specifically developed with respect to medical devices, they would not appear to fall within section 360k. Likewise, because the plaintiff's claims for defects in design and construction are based on common law "general obligations" that apply to all manufacturers, and are not specifically established for medical devices, those claims would also not appear to be preempted by the MDA.

Defendant urges this court to "revisit" *Kernats* and follow the seventh circuit's subsequent ruling in *Mitchell*, 126 F.3d 902, as well as other cases decided after *Medtronic* holding that state law claims are preempted when a device has gone through PMA review. Defendant contends that because *Medtronic* did not address a medical device that had gone through the full PMA review process, the decision did not specifically answer the question in this case, and he argues that the precedential value of *Medtronic* is very limited by the various opinions in that decision.

In *Mitchell*, 126 F.3d 902, the seventh circuit addressed the question of preemption with regard to a medical device that had undergone the PMA process and concluded that the plaintiffs' state claims were preempted under the MDA. The Mitchells filed a complaint, alleging counts of strict liability, negligence, fraud, mislabeling, misbranding, adulteration and breach of warranty, related to collagen injections Ms. Mitchell received. *Mitchell*, 126 F.3d at 906. The *Mitchell* court stressed the factual distinction from *Medtronic* because the product in *Mitchell* had been subjected to full PMA review. *Mitchell*, 126 F.3d at 907.

The *Mitchell* court discussed the disagreement among the Justices in *Medtronic*, recognizing the difficult situation created by *Medtronic* and stating:

"[A]lthough we have an obligation to be absolutely faithful to the holdings of the Supreme Court of the United States, the holding in *Medtronic* contains several ambiguities that impair our ability to perceive with absolute clarity the path that the Court has chosen for us to follow.

\*\*\* Like the majority of courts that already have had to deal with this quandary, we believe that the *Medtronic* disposition must be read as acknowledging that at least some state-based common law causes of action must be considered 'requirements' as that term is employed in the MDA." *Mitchell*, 126 F.3d at 910.

The *Mitchell* court determined that the Mitchells' strict liability claims were preempted by the PMA process for a class III medical device, stating:

"Approval by the FDA constitutes approval of the product's design, testing, intended use, manufacturing methods, performance standards and labeling. The FDA's determination is specific to the product. A state court judgment premised on a contrary determination, as a finding of liability based on the Mitchells' strict liability claim necessarily would be, would constitute \*\*\* a requirement 'different from, or in addition to,' the standard required by federal authority." *Mitchell*, 126 F.3d at 913.

The court also determined that the Mitchells' negligence claims must be considered preempted to the extent that they alleged that Collagen was negligent despite its adherence to the standards required by the FDA in its PMA for the product. "A state court judgment premised on a determination that such a specific allegation is true would necessarily conflict with the determination of the FDA that its requirements rendered the product safe and effective." *Mitchell*, 126 F.3d at 913.

The court found the Mitchells' claims for breach of an implied warranty were preempted because an implied warranty claim is based on the accepted standards of design and manufacture of the products. The court stated:

"In the case of a product that has gone through the PMA process, these criteria are set by the FDA. A state judgment for breach of implied warranty that rested on allegations about standards other than those permitted by the FDA would necessarily interfere with the PMA process and, indeed, supplant it." *Mitchell*, 126 F.3d at 915.

In addition to *Mitchell*, several cases after *Medtronic* have held state law claims are preempted where the device in question

underwent PMA review, rather than being marketed under an exception to that process. See *Easterling v. Cardiac Pacemakers, Inc.*, 986 F. Supp. 366 (E.D. La. 1997) (state law claims for negligence and strict liability related to pacemaker despite manufacturer's adherence to FDA PMA requirements preempted by MDA); *Richman v. W.L. Gore & Associates, Inc.*, 988 F. Supp. 753 (S.D.N.Y. 1997) (state law claims for breach of implied warranty and tort claims preempted by MDA for medical device that underwent PMA approval except for claims based on failure to meet PMA requirements); *Lake v. Telectronics Pacing Systems, Inc.*, 1 F. Supp. 2d 84 (D. Mass. 1998) (state law claims for negligence and breach of warranty against manufacturer of pacemaker preempted where pacemaker went through PMA review). See also *Martin v. Telectronics Pacing Systems, Inc.*, 105 F.3d 1090 (6th Cir. 1997), *cert. denied*, 522 U.S. 1075, 139 L. Ed. 2d 751, 118 S. Ct. 850 (1998) (state law claims preempted by MDA for pacemaker marketed under investigational exception to PMA process); *Chambers v. Osteonics Corp.*, 109 F.3d 1243 (7th Cir. 1997) (state law claims related to device marketed under investigational exception preempted to extent would impose greater requirement than those already imposed by FDA); *Papike v. Tambrands, Inc.*, 107 F.3d 737 (9th Cir. 1997), *cert. denied*, 522 U.S. 862, 139 L. Ed. 2d 110, 118 S. Ct. 166 (1997) (state law claim for failure to warn of risk of toxic shock syndrome related to use of tampons, a class II device, preempted by MDA); *Berish v. Richards Medical Co.*, 937 F. Supp. 181 (N.D.N.Y. 1996) (state common law claims for negligence and strict products liability preempted by MDA for device marketed under investigational exception); *Chmielewski v. Stryker Sales Corp.*, 966 F. Supp. 839 (D. Minn. 1997) (strict liability, negligent design and failure to warn claims preempted by MDA for device marketed under investigational exception); *Lewis v. Intermedics Intraocular, Inc.*, 19 F. Supp. 2d 625 (E.D. La. 1998) (state law claim for negligent design preempted by MDA for device marketed under investigational exception).

There have been some contrary decisions. See *Oja v. Howmedica, Inc.*, 111 F.3d 782 (10th Cir. 1997) (no preemption where state law claim predicated on general duties applicable to every manufacturer); *Lakie v. SmithKline Beecham*, 965 F. Supp. 49 (D.D.C. 1997) (PMA process is not a "specific federal requirement" so as to preempt state law claims). See also *Comeau v. Heller*, 945 F. Supp. 7 (D. Mass. 1996) (MDA did not completely preempt state law tort claims regardless of which approval process device underwent).

In *Lake*, 1 F. Supp. 2d 84, the District Court in Massachusetts addressed the preemption of state law claims for negligence and breach of warranty related to the manufacturing of pacemaker, model 1230,

which appears to be the same model number at issue in this case. The court held those claims preempted, stating:

"*[Medtronic]* did not address the separate issue of whether approval through the more rigorous PMA process has the effect of imposing specific federal requirements on the device, for purposes of the preemption clause. [Citation.] Circuit courts have varied as to whether it does, but a majority seem to conclude that, where safety is a primary concern, the PMA process does impose specific federal requirements. [Citations.] Some state courts have come to the same conclusion. [Citations.]

This seems the better view, and this Court will follow it in this case. With regard to the 1230 pacemaker, specific federal requirements are imposed by reason of the PMA approval given by the FDA." *Lake*, 1 F. Supp. 2d at 86-87.

The court next examined whether the state common law causes of action created requirements different from or in addition to the requirements imposed by the PMA. The court noted that *Medtronic* does not provide a clear answer on this question, but concluded, based on *Mitchell* and *Papike*, that the causes of action do impose requirements so as to be preempted. *Lake*, 1 F. Supp. 2d at 87.

Several courts have relied on *Mitchell* when finding state law claims preempted by the MDA. See *Easterling*, 986 F. Supp. at 372 (relying on *Mitchell* and stating that state claims, even those based upon general duty of care, are preempted if they have effect of imposing requirements on device that are different from, or in addition to, federal requirements); *Richman*, 988 F. Supp. at 758 (citing *Mitchell* and deciding to follow majority of courts that have considered the issue and determined that the PMA process constitutes a type of specific federal requirement that can have preemptive effect); *Touchet v. Ace Medical Co.*, No. 96—3534 (E.D. La. August 14, 1998) (citing *Mitchell* and holding state law claims preempted by MDA for device approved under investigational exception); *Worthy v. Collagen Corp.*, 967 S.W.2d 360, 376 (Tex. 1998) (citing *Mitchell* and then concluding that federal requirements on product were sufficiently specific to have preemptive effect) *cert. denied*, 524 U.S. 954, 141 L. Ed. 2d 740, 118 S. Ct. 2372 (1998); but see *In re Orthopedic Bone Screw Products Liability Litigation*, 176 F.R.D. 158 (3rd Cir. 1998) (disagreeing with *Mitchell* and ruling that after *Medtronic* the MDA would not preempt a state law claim for fraudulent misrepresentation to the FDA by a manufacturer during the approval process for a device approved under the substantial equivalent exception and not approved after full PMA review). Most notably, defendant points out that the United States District Court for the Northern District of Illinois recently followed *Mitchell* in *Rogerson*

*v. Telectronics Co.*, No. 94 C 5477 (N.D. Ill. August 25, 1998), and ruled that the MDA preempted state law claims for strict liability, negligence, and implied warranty for a pacemaker that underwent full PMA review.

■ When analyzing the scope of preemption of a federal act, the Illinois Supreme Court has held that "decisions of the Federal courts interpreting a Federal act *** are controlling upon Illinois courts, 'in order that the act be given uniform application.' " *Busch*, 169 Ill. 2d at 335 (holding plaintiff's wrongful death claim preempted by Federal Hazardous Substances Act (15 U.S.C. § 1261 *et seq.* (1988)), quoting *Bowman v. Illinois Central R.R. Co.*, 11 Ill. 2d 186, 200 (1957); see *Elgin, Joliet & Eastern Ry. Co. v. Industrial Comm'n*, 9 Ill. 2d 505, 507 (1956) (decisions of federal courts are controlling upon court in interpretation of federal statue); *Bowman v. Illinois Central R.R. Co.*, 11 Ill. 2d 186, 199-200 (1957) (rights created under federal statute are governed, not by state law, but by decisions of federal courts, in order that federal act be given uniform application); *Boyer v. Atchinson, Topeka & Santa Fe Ry. Co.*, 38 Ill. 2d 31, 34 (1967) (in construing federal statutes, court looks to federal decisions); *Golden Bear Family Restaurants, Inc. v. Murray*, 144 Ill. App. 3d 616, 620 (1986) (decisions of federal courts are controlling upon appellate court in interpretation of federal statute); see also *Hiles v. Norfolk & Western Ry. Co.*, 268 Ill. App. 3d 561, 563-64 (1994) (court must look to federal decisions for guidance and interpretation of federal acts to prevent erosion of rights conferred under federal law and to achieve uniformity; but where split of authority existed among federal courts, court chose to follow prior state case law), *rev'd*, 516 U.S. 400, 134 L. Ed. 2d 34, 116 S. Ct. 890 (1996) (resolving split of authority contrary to state court's ruling).

■ Under *Mitchell* and what appears to be a majority of other federal court decisions, plaintiff's claims would be preempted because a determination by a state court as to a product defect or as to its fitness or merchantability would be "different from, or in addition to" the federal approval of these pacemakers. Plaintiff contends that this court should not follow *Mitchell*, because it and the other cases following it improperly interpreted *Medtronic* and therefore they should not be considered binding on this court, and that this court should follow *Kernats*.

We agree with the *Kernats* court that PMA approval creates a specific federal regulation and follow that portion of its ruling. We disagree, however, with the *Kernats* court as to whether the state law claims create requirements different from or in addition to the federal requirements so as to find preemption. A majority of the federal courts, including the seventh circuit, have interpreted the MDA PMA to

preempt the type of state law claims presented in this case. While there are some decisions to the contrary, the prevailing view of the federal courts at this time is that the state law claims impose requirements different from or in addition to the federal requirements and we will follow this view.

We observe that since *Medtronic* several state courts have found state law claims involving devices that had undergone PMA review preempted by the MDA. See, *e.g., Worthy*, 967 S.W.2d at 376 (claims brought under state consumer protection law preempted by MDA); *Fry v. Allergan Medical Optics*, 695 A.2d 511, 517 (R.I. 1997) (claims for negligence, strict liability, and breach of warranty preempted by MDA) *cert. denied*, 522 U.S. 952, 139 L. Ed. 2d 291, 118 S. Ct. 374 (1997); *Steele v. Collagen Corp.*, 54 Cal. App. 4th 1474, 1489, 63 Cal. Rptr. 2d 879, 888 (1997) (stating that claim relating to safety and effectiveness of device preempted to extent it sought to impose requirements different from or in addition to federal requirement resulting from PMA process; refusing to follow prior ruling in *Armstrong v. Optical Radiation Corp.*, 50 Cal. App. 4th 580, 57 Cal. Rptr. 2d 763 (1996), that found no preemption); *Green v. Dolsky*, 546 Pa. 400, 685 A.2d 110 (1996) (failure to warn, strict liability, and breach of warranty claims preempted) *cert. denied sub nom. Collagen Corp. v. Green*, 520 U.S. 1112, 137 L. Ed. 2d 822, 117 S. Ct. 1695 (1997); but see *Herring v. Telectronics Pacing Systems, Inc.*, 964 S.W.2d 753 (Tex. Ct. App. 1998) ("distinguishing" its supreme court's decision in *Worthy*, 967 S.W.2d at 376, cited above, and ruling that state law claims regarding pacemaker not preempted by MDA because defendant failed to show conflict between state and federal requirements), *rev. denied* (August 25, 1998); *Mears v. Marshall*, 149 Or. App. 641, 944 P.2d 984 (1997) (no preemption for failure to warn, negligent manufacturing, defective design, and breach of warranty claims where state requirement was only general duty); *Wutzke v. Schwaegler*, 86 Wash. App. 898, 940 P.2d 1386 (1997) (state strict liability claims not preempted by MDA because they did not establish additional or different requirements specific to medical devices).[1]

In affirming the lower court, we note that the *Kernats* court did

---

[1] We also note that two state courts, relying on a pre-*Medtronic* case, *Kennedy v. Collagen Corp.*, 67 F.3d 1453 (9th Cir. 1995), *cert. denied*, 518 U.S. 1033, 135 L. Ed. 2d 1094, 116 S. Ct. 2579 (1996), have found no preemption. See *Walker v. Johnson & Johnson Vision Products, Inc.*, 217 Mich. App. 705, 718, 552 N.W.2d 679, 684 (1996) (claims not preempted because premarket approval process not specific requirement applicable to particular device); *Sowell v. Baush & Lomb, Inc.*, 230 A.D.2d 77, 656 N.Y.S.2d 16 (1997) (claims not preempted because PMA process is not specific federal regulation). However,

not have the benefit of many of the federal cases cited above, which provide analysis of the federal statutes involved as well as further review of the Supreme Court's reasoning in *Medtronic*. In light of these additional developments in the federal case law, we hold plaintiff's state law claims are preempted by the MDA.

For the aforementioned reasons, we affirm the judgment and ruling of the circuit court.

Affirmed.

CAMPBELL, P.J., concurs.

JUSTICE ZWICK, dissenting:

I dissent. The United States Supreme Court has spoken directly on this point in *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 135 L. Ed. 2d 700, 116 S. Ct. 2240 (1996), and this court, in a case involving virtually identical facts to those presented here, found no preemption of state common law causes of action. See *Kernats v. Smith Industries Medical Systems, Inc.*, 283 Ill. App. 3d 455, 669 N.E.2d 1300 (1996). Accordingly, I would reverse the finding of preemption and the entry of summary judgment in favor of the defendant.

The majority acknowledges that when considering a preemption question, we must begin with the assumption that the historic police powers of the states are not to be superseded by a federal law unless that was the clear and manifest purpose of Congress. *Kernats*, 283 Ill. App. 3d at 460, citing *Medtronic, Inc.*, 518 U.S. at 485, 135 L. Ed. 2d at 715, 116 S. Ct. at 2250; *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 422, 112 S. Ct. 2608, 2617 (1992). This approach recognizes the "historic primacy of state regulation of matters of health and safety." *Medtronic, Inc.*, 518 U.S. at 485, 135 L. Ed. 2d at 715, 116 S. Ct. at 2250.

Writing separately, Justice Stevens found it "unpersuasive" and "implausible" that Congress would have intended to preclude state courts from affording state consumers any protection from injuries resulting from a defective medical device. *Medtronic, Inc.*, 518 U.S. at 487, 135 L. Ed. 2d at 716, 116 S. Ct. at 2251 (opinion of Stevens, J.). Such an interpretation would have barred most, if not all, relief for persons injured by defective medical devices. *Medtronic, Inc.*, 518 U.S. at 487, 135 L. Ed. 2d at 716, 116 S. Ct. at 2251 (opinion of Stevens, J.). Justice Stevens correctly observed that the MDA was primarily

---

because *Kernats* determined that the PMA process was a specific federal requirement, these cases are not useful in analyzing the issue at hand.

concerned with the problem of specific, conflicting state statutes and regulations rather than the general duties enforced by common law actions. *Medtronic, Inc.*, 518 U.S. at 489, 135 L. Ed. 2d at 718, 116 S. Ct. at 2252 (opinion of Stevens, J.). Justice Stevens further noted that preemption of all state common law causes of action would have the "perverse effect of granting complete immunity from design defect liability to an entire industry that, in the judgment of Congress, needed more stringent regulation in order 'to provide for the safety and effectiveness of medical devices intended for human use.' " *Medtronic, Inc.*, 518 U.S. at 487, 135 L. Ed. 2d at 716-17, 116 S. Ct. at 2251 (opinion of Stevens, J.).

Justice Stevens concluded that Congress did not intend for the MDA to provide a sweeping preemption of traditional common law remedies against manufacturers and distributors of defective devices. *Medtronic, Inc.*, 518 U.S. at 491, 135 L. Ed. 2d at 719, 116 S. Ct. at 2253 (opinion of Stevens, J.). Such a sweeping interpretation would require far greater interference with state legal remedies, producing a serious intrusion into state sovereignty while simultaneously wiping out the possibility of remedy for injured persons. *Medtronic, Inc.*, 518 U.S. at 488-89, 135 L. Ed. 2d at 717-18, 116 S. Ct. at 2252 (opinion of Stevens, J.). Like Justice Stevens, I do not believe that Congress "clearly signaled its intent to deprive States of any role in protecting consumers from the dangers inherent in many medical devices." *Medtronic, Inc.*, 518 U.S. at 489, 135 L. Ed. 2d at 718, 116 S. Ct. at 2252 (opinion of Stevens, J.).

In construing the preemption provision contained in section 360k(a), the Supreme Court held the MDA dictates that preemption occur only where there is a conflict between a specific state requirement and a federal requirement applicable to the same device. *Medtronic, Inc.*, 518 U.S. at 498-99, 135 L. Ed. 2d at 723-24, 116 S. Ct. at 2257. Thus, the Supreme Court defined a two-part inquiry to decide the preemption issue.

First, the "specific" federal requirements must be reviewed; if found "applicable to the device" in question, the requirements will preempt state law only if they are "specific counterpart regulations" or "specific" to a "particular device." *Medtronic, Inc.*, 518 U.S. at 500, 135 L. Ed. 2d at 725, 116 S. Ct. at 2257. Second, the "particular" state requirements must be examined. In order to be preempted, state requirements must, "with respect to" medical devices, be "different from, or in addition to" federal requirements, and relate "to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device." *Medtronic, Inc.*, 518 U.S. at 500, 135 L. Ed. 2d at 724, 116 S. Ct. at 2257. State requirements of

"general applicability" are not preempted except where they have "the effect of establishing a substantive requirement for a specific device." 21 C.F.R. § 808.1(d)(6)(ii) (1995); *Medtronic, Inc.*, 518 U.S. at 499, 135 L. Ed. 2d at 724, 116 S. Ct. at 2257.

In *Kernats*, the court employed this analysis to claims arising from use of a class III device and determined that the PMA process is a specific federal requirement. *Kernats*, 283 Ill. App. 3d at 465. The court then examined the second prong of the analysis: whether the corresponding state requirement was "specifically developed 'with respect to' medical devices." *Kernats*, 283 Ill. App. 3d at 465, citing *Medtronic, Inc.*, 518 U.S. at 501, 135 L. Ed. 2d at 725, 116 S. Ct. at 2258. The court concluded that the plaintiffs' claims based on defective design and inadequate testing allege that defendant defectively designed and failed to adequately test the device. Although these allegations related to the specific medical device at issue, they emanated from general duties applicable to every manufacturer; the legal duty owed to the plaintiffs was the general duty of every manufacturer to use due care to avoid foreseeable dangers in its products. *Kernats*, 283 Ill. App. 3d at 465-66, citing *Medtronic, Inc.*, 518 U.S. at 501, 135 L. Ed. 2d at 725, 116 S. Ct. at 2258. The court concluded that the plaintiffs' common law tort claims, based upon general liability principles, were not preempted by the MDA.

Upon consideration of the plaintiffs' claims for breach of implied warranties of merchantability and fitness, the court noted that the FDA regulations specifically provide, as an example of a permissible general requirement, that the Uniform Commercial Code warranty of fitness is not preempted. *Kernats*, 283 Ill. App. 3d at 466-67, citing 21 C.F.R. § 808.1(d)(1) (1995); *Medtronic*, 518 U.S. at 497, 135 L. Ed. 2d at 724, 116 S. Ct. at 2257. Because these state requirements are clearly of "general applicability," and not "specifically developed 'with respect to' medical devices," they do not fall within the purview of section 360k. Therefore, those claims were not preempted by the MDA.

In my view, the State of Illinois has an obligation to protect the rights of its citizens to recover for injuries caused by defectively manufactured goods, of whatever type, and we are obligated to follow the precedent defined by the United States Supreme Court and to adhere to the prior holdings of this court where they control the issues at hand. I would, therefore, reverse the finding of preemption by the trial court.